## IN THE MATTER OF SANDRA WHICHARD

### No. 703DC225

### (Filed 27 May 1970)

1. **Appeal and Error § 24— necessity for assignments of error — indigent appellant — consideration of appeal**

   Appeal is subject to dismissal where both the record on appeal and the appellant's brief contain no assignments of error but list or refer only to the exceptions, Rule of Practice in the Court of Appeals No. 28; however, the Court of Appeals considers the appeal on its merits where it does not appear that appellant, a juvenile and an indigent, was represented by court-appointed counsel either on appeal or in the district court.

2. **Constitutional Law § 29; Courts § 15; Infants § 10— juvenile hearing — right of jury trial**

   A juvenile has no constitutional right to a jury trial in a juvenile hearing.

3. **Constitutional Law § 30; Courts § 15; Infants § 10— juvenile hearing — right to public trial**

   District court did not err in excluding the general public from a juvenile hearing.

**4. Courts § 15; Infants § 10; Constitutional Law § 20— juvenile delinquency statute — lengthy commitment — constitutionality**

The Juvenile Court Act is not unconstitutional on the ground that it authorizes a longer period of confinement for a juvenile who violates a criminal statute than for an adult who violates the same statute.

**5. Infants § 10— juvenile hearing — sufficiency of evidence**

In a juvenile hearing on a charge that the juvenile, a 15-year-old girl, assaulted a female schoolmate with her hands and fists during school hours, the evidence *is held* sufficient to withstand the juvenile's motion to dismiss the charge.

**6. Infants § 10; Courts § 15— juvenile hearing — court as trier of fact**

As the trier of the facts, the court in a juvenile delinquency proceeding has the duty to determine the weight and credibility to be given to the evidence presented, and it can believe or disbelieve the testimony of any witness.

**7. Appeal and Error § 45— the brief — abandonment of exceptions**

An exception not argued in appellant's brief is deemed abandoned. Rule of Practice in the Court of Appeals No. 28.

**8. Infants § 10— juvenile delinquency statute — commitment for indefinite time — constitutionality**

The Juvenile Court Act is not unconstitutional on the ground that it permits a delinquent to be confined in a state institution for an indefinite period of time.

**9. Infants § 10— purpose of Juvenile Court Act**

The purpose of the Juvenile Court Act is to give to delinquent children the control and environment which may lead to their reformation and enable them to become law abiding and useful citizens — a support and not a hindrance to the State.

**10. Infants § 10; Courts § 15— juvenile statute — jurisdiction over child**

Under the Juvenile Court Act, as amended, jurisdiction of the child ordinarily does not extend beyond the eighteenth birthday of the child. G.S. 7A-286(4)(c).

**11. Infants § 10— subject matter of Juvenile Court Act — termination of judisdiction**

The subject matter of the Juvenile Court Act is delinquent children, over whom the juvenile courts are given control and jurisdiction during their minority; this clearly ends when their minority ends and their status as children no longer obtains.

APPEAL by respondent from *Phillips, District Judge,* November 1969 Session, District Court, PITT County.

This case arose out of an incident which occurred at Julius Rose High School in Greenville. The facts are set out in the opinion.

The appellant, a juvenile age 15, and her parents were summonsed to attend a juvenile hearing pursuant to a juvenile petition filed by David R. Bullock of the Greenville Police Department, as follows:

"D. R. Bullock, Petitioner, having sufficient knowledge or information to believe that the child named above is in need of the care, protection or discipline of the State, alleges:

1. That said child is less than sixteen years of age, and is now residing within the territorial jurisdiction of the District Court for this County at the address shown above.

2. That the names of the parents, and of the person having the guardianship, custody or supervision of said child if other than a parent, are as follows:

| Name | Relation | Address |
|---|---|---|
| David Whichard | Father | 904-A Bancroft Avenue, Greenville |
| Mildred Whichard | Mother | 904-A Bancroft Avenue, Greenville |

3. That the facts and circumstances supporting this petition for court action are as follows:

Assaulted Betty Moore with her hands and fist, Betty Moore a white female, age 16.

Petitioner, therefore, prays the court to hear and determine this case, and, if need be found, to give said child such oversight and control as will promote the welfare of such child and the best interest of the State."

At the hearing, the juvenile was represented by counsel, Jerome Paul, attorney of Greenville, and James E. Ferguson, II, of Chambers, Stein, Ferguson and Lanning, Charlotte, North Carolina. The court, of its own motion, ruled that the public would be excluded from the hearing, to which ruling the juvenile objected and excepted.

Prior to the introduction of evidence, the juvenile moved to dismiss the petition on the ground that the juvenile statute is unconstitutional — that it is vague and overbroad and violates the juvenile's rights of due process and equal protection. To the denial of this motion, the juvenile objected and took an exception.

At the conclusion of the evidence for the State, the juvenile moved that the petition be dismissed. The motion was denied and

was renewed at the conclusion of all the evidence. It was again denied, and the juvenile objected and excepted.

The court entered an order finding facts and adjudicating the juvenile to be a delinquent child and committing her "to the Dobbs Farm, an institution for girls of the age of 15 years maintained and operated by the State of North Carolina, at Kinston, North Carolina, to be and remain in the custody of said institution for such period of time as the Board of Juvenile Correction or the Superintendent of said institution may determine consistent with the law controlling."

To the entry of the judgment the juvenile objected, excepted, and appealed to this Court.

*Attorney General Robert Morgan by Staff Attorney L. Philip Covington for the State.*

*Jerry Paul and Chambers, Stein, Ferguson and Lanning, by James E. Ferguson, II, for respondent appellant.*

MORRIS, J.

[1] At the outset, we notice that the record on appeal contains no assignments of error, but the exceptions are listed. The brief of appellant does not refer to any assignment of error but refers only to the exceptions shown in the record. The appeal is subject to dismissal for failure to comply with the rules of this Court. *Trust Co. v. Henry*, 267 N.C. 253, 148 S.E. 2d 7 (1966); Rule 28, Rules of Practice of the Court of Appeals of North Carolina. It does not appear that appellant was represented by court-appointed counsel either on appeal or in District Court. It does appear, however, that she was allowed to appeal as a pauper upon the filing of an affidavit of indigency. We have, therefore, despite the failure to present her appeal properly, considered the appeal on its merits.

[2-4] The appellant strenuously argues that the court committed error in denying her motion for a jury trial (Exception No. 3) and in excluding the general public from the hearing (Exception No. 1). She also argues that Article 2 of Chapter 110, General Statutes of North Carolina (the North Carolina Juvenile Court Act) is unconstitutional on its face or as applied because it is void for vagueness and overbreadth and authorizes a longer period of confinement for a juvenile who violates a criminal statute than for an adult who violates the same statute (Exception No. 2). All of these questions were raised in *In re Burrus*, 275 N.C. 517, 169 S.E. 2d 879 (1969),

comprehensively discussed by Huskins, J., in the opinion therein and decided adversely to the juvenile's position. We note that the juvenile in that case was represented by the same counsel who now argues the same position he argued in that case. Counsel urges that the ruling in *In re Burrus, supra,* should now be reconsidered in light of the decisions in *DeBacker v. Brainard,* 396 U.S. 28, 24 L. Ed. 2d 148, 90 S. Ct. 163 (1969). There the Supreme Court of Nebraska had affirmed the District Court of Dodge County, Nebraska, in its dismissal of a habeas corpus petition by a minor, who, after a hearing without a jury before a juvenile court judge, had been found to be a delinquent and committed to a training school because of an act which, if committed by an adult, would have constituted forgery under state law. Appeal to the United States Supreme Court was dismissed as an inappropriate case for determining whether the juvenile was entitled to a jury trial because at the time of the juvenile's hearing, he would have had no constitutional right to a jury trial if he had been tried as an adult in a criminal proceeding. The appellant points to the strong dissenting opinions of Justices Douglas and Black, in *DeBacker,* as the basis for her argument. We find nothing in appellant's argument indicating or requiring a reassessment of the principles enunciated in *In re Burrus.* We adhere to the principles of *In re Burrus,* and the questions here set out as raised by appellant are answered adversely to her.

[5]    Appellant also contends that her motion to dismiss the petition as of nonsuit should have been allowed. The evidence for the petitioner tends to show that at about 1:00 p.m. on 24 October 1969 Betty Moore and a friend were standing in the foyer or hall at the front door of Julius Rose High School. The respondent, Sandra Whichard, and two other girls came into the entrance hall. Sandra was in the middle. One of the girls pushed Betty. When Betty regained her balance, she stuck out her tongue at the girl. After a verbal exchange, Betty again stuck out her tongue. Betty Moore's account of the events following was: "Before I knew what was happening, Sandra had backed away among the other people and it was calm for a brief moment. And then all of a sudden, just like a ball of fire hit her, Sandra slapped me. Sandra slapped me on the right side of my face. I was pushed and lost my balance, and when I regained my balance I was mad, and I slapped Sandra who was back leaning onto the trophy case. Someone yelled, 'Get her.' Then Sandra hit me back in the face, grabbed my face and scratched it. Before I knew it, everyone was on me pulling me by the hair. I was on the floor. I did not see Sandra any more. I was knocked out. I was trying to get up and grabbed a boy in the stomach. I felt my fingernails

go into him. I pulled myself up and as soon as I got up I was knocked down again. I don't remember what happened then until I was taken into a room where I passed out again. The next thing I remember I was sitting on some kind of board. I was injured. I had fingernail scratches on my face which have now cleared up. I had bumps all over my head. Half of my hair was pulled out. I got scratched and kicked. My lip was busted inside. My knees were badly bruised up, and my arms and hands got bruised. I had no broken bones. I was taken out on a stretcher, put in an emergency rescue squad truck and carried to Pitt Memorial Hospital where I was treated and released. I did not stay overnight."

A teacher testified that he was in the hall at the time the commotion started and was not more than 10 feet from Betty Moore who had stopped and was watching what was going on. As she was watching, someone came by and "either pushed or hit her". She "said something back" and stuck her tongue out at them. Someone hit her and then everything broke loose on her. He tried to get her away and get her out. Finally a policeman got there and was able to stop it and get people away from her. When the witness got to Betty Moore, the police officer was holding some girl who was trying to get away from him, was kicking and hollering. Betty Moore was lying on the floor with her face down. He picked her up and put her into the construction area where she was administered first aid.

The police officer testified that when he got through the crowd and got the crowd pushed back, he found Sandra Whichard on top of Betty Moore. He further testified: "She was on top of her pulling her hair out. She had her hands full of hair, that she had pulled from Miss Moore's head. I immediately reached down and took hold of both of Sandra Whichard's hands and pulled her up and kinda set her to one side. At that time I realized that Betty Moore was unconscious. At that time Sandra Whichard went back on Betty Moore on the floor, hitting her with her fists and reached up and grabbed two more hands full of hair. At that time I grabbed her by her hands again; and when I got her up that time I held on to her and summoned aid so I could get Betty Moore into a room off to herself. I then turned Sandra Whichard over to two other officers who brought her to the courthouse."

The juvenile and witnesses testifying in her behalf testified, in substance, that Betty Moore struck the first blow, that Betty Moore was not unconscious when the officer arrived but became unconscious after he pulled Sandra Whichard from Betty Moore. One witness for the juvenile testified, on direct examination, that before the fight-

ing was stopped, Betty Moore looked up and said, "Please stop hitting me."

Clearly the evidence was sufficient to withstand the motion to dismiss, and the court did not commit error in denying the motion.

[6] Appellant contends that the judgment should have been set aside, arguing that the evidence was clearly insufficient to establish guilt beyond a reasonable doubt. We do not agree. Prior to the presentation of any evidence and upon inquiry of counsel for the juvenile, the court announced that the degree of proof required to be met by petitioner was proof of the allegations in the petition beyond a reasonable doubt. *In re Winship*, 25 L. Ed. 2d 368 (decided 31 March 1970). Appellant cites no authority to support her contention. She argues that the juvenile produced five witnesses who contradicted the testimony of Miss Moore, the police officer, and the teacher. Apparently appellant's position is that the juvenile's witnesses were numerically stronger and, therefore, the trier of the facts could not be convinced of the juvenile's guilt beyond a reasonable doubt. This argument, of course, finds no support in our law. Where, as here, there is no jury trial, the court is the trier of the facts. As the trier of the facts, the court had the duty to determine the weight and credibility to be given to the evidence presented, and he could believe or disbelieve the testimony of any witness. *Taney v. Brown*, 262 N.C. 438, 137 S.E. 2d 827 (1964). Appellant's contention in this respect is without merit.

[7] Appellant's Exception No. 5 apparently is taken to the court's ruling on two separate motions; the motion to set the judgment aside and her motion for arrest of judgment on the ground that to subject the juvenile to further disposition by the State would constitute double jeopardy because she had already been disciplined by an institution of the State by her suspension from school. Even should we assume this exception to be properly taken, appellant's brief contains no argument on this question, and we therefore deem this position abandoned. Rule 28, Rules of Practice of the Court of Appeals of North Carolina.

[8] Finally, appellant contends that the North Carolina Juvenile Court Act (Article 2 of Chapter 110) was, at the time of this occurrence and hearing, unconstitutional in that, as applied, it permitted one who was adjudicated a delinquent to be confined in a State institution for an indefinite period of time. Again appellant cites no authority for this argument. She takes the position that the judgment providing that she remain at Dobbs Farm "for such period of time as the Board of Juvenile Correction or the Superintendent of said

institution may determine consistent with the law controlling" could result in her remaining in a State institution forever.

**[9, 10]**   The speciousness of this paralogistic argument is readily apparent upon an analysis of the statute. The purpose of the statute is to give to delinquent children the control and environment which may lead to their reformation and enable them to become law abiding and useful citizens — a support and not a hindrance to the State. *State v. Burnett,* 179 N.C. 735, 102 S.E. 711 (1920). Under the statute, as amended, effective pending this appeal, jurisdiction of the child ordinarily does not "extend beyond the eighteenth birthday of the child." G.S. 7A-286(4)(c). The training schools were established for the training and moral and industrial development of the delinquent children of the State. *State v. Frazier,* 254 N.C. 226, 118 S.E. 2d 556 (1961). In that case, Parker, J. (later C.J.), quoted the Court in *In re Watson,* 157 N.C. 340, 72 S.E. 1049 (1911), as follows:

> "The question as to the extent to which a child's constitutional rights are impaired by a restraint upon its freedom has arisen many times with reference to statutes authorizing the commitment of dependent, incorrigible, or delinquent children to the custody of some institution, and the decisions appear to warrant the statement, as a general rule, that, where the investigation is into the status and needs of the child, and the institution to which he or she is committed is not of a penal character, such investigation is not one to which the constitutional guaranty of a right to trial by jury extends, nor does the restraint put upon the child amount to a deprivation of liberty within the meaning of the Declaration of Rights, nor is it a punishment for crime."

**[11]**   The subject matter of the statute is delinquent *children,* over whom the juvenile courts are given control and jurisdiction during their *minority.* This clearly ends when their *minority* ends and their status as a *child* no longer obtains. As was said in *In re Burrus, supra,* appellant seeks "to equate the protective custody of children under the juvenile laws of the State with the trial and punishment of adults under the criminal statutes." By so doing, she concludes that since a juvenile may be committed "during minority" (unless sooner released by the proper authorities) he may be required to "remain in a state institution FOREVER." Therefore, she argues the statute is unsound. This rationale is fallacious and is not supported by the statute, by any decision of the courts of this State, other states, or any federal decision called to our attention or which we have been able to find.

The juvenile here was fully advised of the alleged misconduct, had ample time for preparation for hearing, she and her parents had ample notice of the hearing and adequate opportunity to be heard. She was ably represented by counsel of her choice.

No error.

MALLARD, C.J., and GRAHAM, J., concur.