STATE OF NORTH CAROLINA v. ADRIAN CARLO RHYNE

No. COA95-1133

(Filed 15 October 1996)

### Searches and Seizures § 82 (NCI4th)— drug raid—pat down for weapons—totality of circumstances—unreasonable intrusion

The trial court erred in a prosecution for possession with intent to sell and deliver cocaine by denying defendant's motion to suppress cocaine found on his person in a warrantless search where an officer received an anonymous telephone call from a caller who reported that several black males were selling drugs in the breezeway of a building; no further description was given of the men; officers arrived at the building within ten minutes and observed several black men in the upper part of a breezeway and defendant seated on a step in the lowest level of the breezeway; defendant was approached and produced identification showing that he was a resident of the building; the officer asked defendant if he had drugs on him and defendant answered that he did not; the officer asked if he could search defendant and defendant refused; the officer asked if he would allow a dog standing 10 to 15 feet away to check him out; defendant refused, stating that he was afraid of dogs; other officers said that they had found a large amount of money on the other men; the officer asked defendant if he had any weapons on him and defendant said that he did not; the officer decided to return to his car to check for any outstanding warrants for defendant; he frisked defendant before doing this and felt something which he suspected to be rock cocaine; and he reached into defendant's pocket and pulled out a plastic bag containing what appeared to be crack cocaine. The anonymous tip was not specific to defendant; the area was known for drug activity but was defendant's residence; defendant was cooperative when questioned and did not flee the scene; he was wearing a jersey and shorts, neither of which could easily conceal a weapon; when asked if he had a weapon he lifted his shirt to show that he did not; he did not make any sudden or suspicious gestures which would suggest that he had a weapon; and the findings indicate that other officers were nearby whom the arresting officer could have asked to cover him while he went to his patrol car to check for outstanding warrants.

**Am Jur 2d, Searches and Seizures §§ 51, 78.**

**Modern status of rule governing admissibility of evidence obtained by unlawful search and seizure. 50 ALR2d 531.**

**Lawfulness of nonconsensual search and seizure without warrant, prior to arrest. 89 ALR2d 715.**

Judge MARTIN, Mark D. dissenting.

Appeal by defendant from judgment and commitment entered 27 April 1995 by Judge Robert P. Johnston in Mecklenburg County Superior Court. Heard in the Court of Appeals 3 June 1996.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Elisha H. Bunting, Jr. and Assistant Attorney General D. Sigsbee Miller, for the State.*

*Allen W. Boyer for defendant.*

LEWIS, Judge.

The sole issue on appeal is whether the trial court erred in denying defendant's motion to suppress evidence obtained in a warrantless search of defendant.

On 19 September 1994, defendant was indicted for possession with intent to sell and deliver cocaine in violation of N.C. Gen. Stat. section 90-95(a)(1) (1990). The case came on for trial at the 24 April 1995 criminal session of superior court. On 1 September 1994, defendant moved to suppress evidence obtained from a search performed by the arresting officer. After making findings of fact and conclusions of law, the trial court denied defendant's motion. Defendant gave notice of appeal. Defendant then pled guilty to the charge as indicted. He was given a suspended sentence of three (3) years and placed on probation. Even though defendant entered a plea of guilty to the charges against him, he preserved his right of appeal pursuant to N.C. Gen. Stat. section 15A-979(b) (1988) from the denial of his motion to suppress the evidence seized in the search.

At the suppression hearing, the State presented evidence showing the following: On 1 July 1994, Officer D. L. Scheppegrell of the Charlotte Police Department received an anonymous telephone call from a caller who reported that several black males were selling drugs in a breezeway of a building located at 3101 Nobles Avenue.

However, the caller gave no further description of the men. Officer Scheppegrell and other officers arrived at the address within ten minutes and observed several black men in the upper part of a breezeway. They also observed defendant who was seated on a step in the lowest level of the breezeway, below where the other men were.

Officer Scheppegrell approached defendant while other officers approached the men in the upper breezeway. Defendant was wearing a Carolina Panthers hat, a jersey, and blue jean shorts. After the officer asked him for identification, defendant produced identification showing that he was a resident of an apartment in 3101 Nobles Avenue. The officer asked defendant if he had any drugs on him; defendant answered that he did not. The officer then asked if he could search defendant, but defendant refused.

The officer also asked defendant if he would allow a dog standing 10 to 15 feet away from him to check him out. A canine officer, who was standing a few feet away with the dog on a leash, explained to defendant that the dog would not bite him. However, defendant refused stating that he was afraid of dogs. While the canine officer was talking to defendant, the other officers told Officer Scheppegrell that they had found a large amount of money on the other men. The officer also asked defendant if he had any weapons, and defendant said that he did not.

Officer Scheppegrell then decided to return to his car to check for any outstanding warrants for defendant. However, before doing this, he frisked defendant for weapons by checking his waistband and by feeling the outside of his pockets. In the right pocket, the officer felt something which he immediately suspected to be cocaine rocks. He reached into the pocket and pulled out a plastic bag containing a substance appearing to be crack cocaine. Defendant was then arrested. A further search revealed a small plastic bag of powder in defendant's left pocket.

Officer Scheppegrell testified that this incident occurred in a high drug trafficking area and that, in his experience, drug suspects often carry weapons. He stated that he did not want to turn his back on defendant before going to his car to check for warrants, without first checking for weapons. He also testified that defendant appeared nervous while he was being questioned. He further testified that, while he was questioning defendant, other officers were in the upper breezeway questioning the other young men. He also stated, that in

**STATE v. RHYNE**

[124 N.C. App. 84 (1996)]

his experience with drug dealers, one person would have the money and another would have the drugs.

Defendant's account of the events is similar to that given by Officer Scheppegrell. However, defendant testified, that when asked if he had weapons he said "no" and then pulled up his shirt and turned around to show that he had no guns near his back. He also testified that he did not hear the other officers say that they had found money on the other men.

The trial court made the following findings of fact:

1. On or about July 1, 1994, Officer D. L. Scheppegrell received an anonymous telephone call reporting that there were several black males selling drugs in the breezeway of an apartment complex located at 3101 Nobles Avenue. The anonymous caller provided no description of the black males reportedly involved in the drug transactions.

2. Shortly after receiving the call, Officer Scheppegrell and other police officers went to the address in question. Officer Scheppegrell observed several black males, including the Defendant, in the vicinity of the breezeway. He arrived between 3:00 and 4:00 p.m.

3. On the occasion in question, Officer Scheppegrell had been a police officer in excess of ten years and had received training in identifying controlled substances and had felt and touched cocaine and its derivatives on hundreds of occasions.

4. When he arrived at 3101 Nobles Avenue, he approached a black male and spoke with Adrian C. Rhyne, the Defendant. Mr. Rhyne was sitting in the area of a stairwell between the first and second floors and Officer Scheppegrell asked him for identification, which the Defendant produced.

5. The Defendant lived in the complex involved.

6. While he was talking with the Defendant, Officer Scheppegrell did not observe any money, beeper or weapon on the Defendant. When he spoke with the Defendant, however, the Defendant did appear to be nervous. Defendant was dressed in blue jean shorts and wore a Panthers hat and a Panthers jersey.

7. In his conversation with the officer, the Defendant said he had no drugs. Officer Scheppegrell asked the Defendant if he minded the officer's searching him; and the Defendant said, "Yes," he did

mind. Officer Scheppegrell thereafter asked the Defendant if it would be agreeable for the drug dog to sniff about him for drugs. The Defendant indicated he was afraid of dogs and did not want the dog sniffing him. Officer Scheppegrell asked the Defendant if he had weapons and the Defendant said, "No," and lifted his jersey to show the officer the area around his waistband.

8. Officer Scheppegrell, after talking with the Defendant, decided to return to his patrol car and to determine whether or not there were any outstanding warrants against the Defendant. He did not want to turn his back on the Defendant without searching him, in that the complex in question was across from Boulevard Homes and in an area with a reputation for high drug activity. Officer Scheppegrell felt that individuals involved in drug activities sometimes carry weapons.

9. There were several other police officers in the complex at the time Officer Scheppegrell was speaking with the Defendant and at the time that he made his determination to search the Defendant. Exactly where in relationship to Officer Scheppegrell and the Defendant the other officers were located when the conversation and subsequent search took place cannot be determined from the evidence.

10. Officer Scheppegrell commenced patting the Defendant down and when he touched the outside pockets of the Defendant's pants, he felt something he immediately believed to be crack cocaine. His determination was based on the way crack is typically packaged. He pulled out a plastic bag from the right pocket of the Defendant in which there were 10 rocks of crack. He thereafter placed the Defendant under arrest and found smaller portions of cocaine powder on the Defendant's person.

Based on these findings, the trial court concluded, *inter alia*, that the investigative stop and pat-down were reasonable considering the totality of the circumstances and that defendant's constitutional rights were not violated.

On appeal, defendant asserts that the trial court erred in denying his motion to suppress the seized evidence because it was seized in violation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution.

If supported by competent evidence, the trial court's findings of fact are binding on appeal. *See State v. Brooks*, 337 N.C. 132, 140-41,

446 S.E.2d 579, 585 (1994). Although defendant assigned error to the sufficiency of evidence to support the court's findings, he has abandoned this issue on appeal by not presenting argument in his brief. *See* N.C.R. App. P. 28(a) (1996). Even so, we conclude that there is competent evidence to support the findings. Our task, then, is to determine whether the findings support the trial court's conclusions of law. *See State v. West*, 119 N.C. App. 562, 565, 459 S.E.2d 55, 57, *appeal dismissed and disc. review denied*, 341 N.C. 656, 462 S.E.2d 524 (1995).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." U.S. Const. amend. IV. A warrantless search is unconstitutional unless there is probable cause to search and the government demonstrates that the exigencies of the situation made a search without a warrant imperative. *State v. Allison*, 298 N.C. 135, 141, 257 S.E.2d 417, 421 (1979) (citing *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685 (1969)).

The State does not contend that the officer had probable cause to search defendant. The issue here is whether, absent probable cause, the officer was justified in searching defendant for weapons. The U.S. Supreme Court has held that a protective pat-down search for weapons may be performed by an officer, even without probable cause, if he has reason to believe, based on objective facts, that he is dealing with an armed and dangerous individual. *Terry v. Ohio*, 392 U.S. 1, 27, 20 L. Ed. 2d 889, 909 (1968). The officer must have acted "upon 'specific and articulable facts' that led him to conclude that [the] defendant was, or was about to be, engaged in criminal activity and that [the] defendant was 'armed and presently dangerous.' " *State v. Butler*, 331 N.C. 227, 233, 415 S.E.2d 719, 722 (1992) (quoting *Terry*, 392 U.S. at 21, 24, 20 L. Ed. 2d at 906, 908). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909.

The State relies on *State v. Wilson*, 112 N.C. App. 777, 437 S.E.2d 387 (1993). In *Wilson*, the officers stopped and searched the defendant after receiving an anonymous tip that several individuals were dealing drugs in the breezeway of an apartment building but gave no description of the alleged dealers. *Id.* at 778, 437 S.E.2d at 387. We upheld the search. *Id.* at 779, 437 S.E.2d at 388.

However, this case is distinguishable from *Wilson*. In *Wilson*, the defendant and the other suspects attempted to flee when the squad car drove into the parking lot. *Id.* Here, the defendant did not flee, but simply remained sitting on the breezeway outside his apartment building and cooperated generally with the officer. Other than being nervous, he exhibited no other behavior that would indicate that he was engaged in criminal activity. In addition, here, unlike *Wilson*, the officer had time to question and observe defendant and to ascertain that he lived in the complex.

Defendant asserts that this case is more akin to *State v. Fleming*, 106 N.C. App. 165, 415 S.E.2d 782 (1992). In *Fleming*, we followed *Brown v. Texas*, 443 U.S. 47, 61 L. Ed. 2d 357 (1979), and held unconstitutional the stop and frisk of a defendant who was simply standing and walking around an apartment complex in a high drug area at twelve o'clock midnight. *Fleming*, 106 N.C. App. at 170-71, 415 S.E.2d at 785-86.

The facts of this case actually lie somewhere between those in *Wilson* and *Fleming*. Unlike the defendant in *Wilson*, defendant did not flee, and unlike *Fleming*, there was an anonymous tip that several men were dealing drugs in the breezeway in which the defendant was sitting. Unlike either *Wilson* or *Fleming*, the facts here show that the officer was aware that the defendant lived in the building where he was searched.

This case is also distinguishable from *In re Whitley*, 122 N.C. App. 290, 468 S.E.2d 610, *disc. review denied*, 344 N.C. 437, 476 S.E.2d 132 (1996), a recent decision in which this Court upheld a similar search. In *Whitley*, officers responded to a report that two black males were selling drugs on Merrick Street in Durham. *Id.* at 292, 468 S.E.2d at 612. Upon arriving at the scene, the officers found two black men in the location indicated by the caller and searched the men. *Id.* In *Whitley*, the caller referred to two black men, whereas here, the caller referred to a group of black men. In addition, in *Whitley*, the officer observed that the defendant's legs "were very tight." *Id.* Here, defendant was not engaged in any suspicious activity or gestures when approached by the officer. Furthermore, the defendant in this case was sitting on the steps outside his apartment; whereas, in *Whitley*, the defendant was standing with another man under a tree near a street. *See id.* at 291, 468 S.E.2d at 611.

In light of the totality of circumstances, we conclude that this patdown search was not justified. The anonymous tip referred simply to

STATE v. RHYNE

[124 N.C. App. 84 (1996)]

several black men located in the apartment complex breezeway; it was not specific to defendant. Furthermore, although defendant was in an area known for drug activity, this area was also his residence, a fact known to the officer prior to the search. When questioned, defendant was cooperative and did not flee the scene. He was wearing a jersey and shorts neither of which could easily conceal a weapon. In fact, when asked if he had a weapon, defendant lifted his shirt to show that he did not. Defendant also did not make any sudden or suspicious gestures which would suggest that he had a weapon. In addition, the court's findings indicate that other officers were nearby. Officer Scheppegrell could have asked one of these officers to cover him while he went to his patrol car to check for outstanding warrants.

This pat-down search was an unreasonable intrusion upon defendant's Fourth Amendment right to personal security and privacy. The trial court erred in denying defendant's motion to suppress the evidence thereby obtained.

The order denying defendant's motion to suppress is reversed, and the judgment is vacated.

Judge JOHNSON concurs.

Judge MARTIN, Mark D. dissents.

Judge MARTIN, Mark D., Judge, dissenting.

As recently articulated by Judge McGee in *In re Whitley*, 122 N.C. App. 290, 468 S.E.2d 610, *disc. review denied,* 344 N.C. 437, 476 S.E.2d 132 (1996), it is well settled " '[a] brief investigative stop of an individual must be based on specific and articulable facts as well as inferences from those facts, viewing the circumstances surrounding the seizure through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.' " *Id.* at 292, 468 S.E.2d at 612 (*quoting State v. Allen,* 90 N.C. App. 15, 25, 367 S.E.2d 684, 689 (1988)). Put simply, an officer must have reasonable suspicion, based on specific and articulable facts, that an individual is involved in criminal activity before performing a pat down search or *Terry* stop. *State v. Fleming,* 106 N.C. App. 165, 169-170, 415 S.E.2d 782, 785 (1992).

In *Whitley,* the officers received a telephone call stating drug sales were occurring "between two black males on Merrick Street."

*Whitley*, 122 N.C. App. at 291, 468 S.E.2d at 611. The officers found two black males standing in the alleged location of the drug sales. *Id.* at 292, 468 S.E.2d at 612. This Court upheld the subsequent *Terry* stop because "the telephone call, later corroborated once the officers arrived at the scene, coupled with the nervous body reflexes of respondent are articulable facts which gave rise to a reasonable suspicion that respondent might be armed, dangerous and involved in criminal activity and justified the officer's search of respondent." *Id.*

Likewise, in the present case, Officer Scheppegrell was dispatched to 3101 Nobles Avenue based on an anonymous telephone tip that <u>several</u> black men were selling drugs in the breezeway. At the scene, Officer Scheppegrell, and his fellow officers, noticed <u>three</u> black males, including the defendant, in the breezeway. Officer Scheppegrell approached defendant, who was sitting alone in the stairwell between the first and second floors, while the other officers went upstairs to question the remaining two men.

At Officer Scheppegrell's request, defendant produced identification indicating he was a resident of the building. Nevertheless, defendant appeared nervous. Officer Scheppegrell testified the other officers informed him the two men in the upper part of the breezeway had a large amount of money, but no drugs. In his experience with drug dealers, Officer Scheppegrell has found one person often holds the money while another person carries the drugs.

Before returning to his car to check for outstanding warrants, Officer Scheppegrell asked defendant if he was carrying any weapons. Defendant responded in the negative and pulled up his shirt to show Officer Scheppegrell his waistband. Officer Scheppegrell proceeded to pat down defendant because, in his experience, drug dealers often carry weapons, some of which are very small and easy to conceal. During this search, Officer Scheppegrell discovered what he readily identified as cocaine.

When considered through "the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training," *Whitley*, 122 N.C. App. at 292, 468 S.E.2d at 612 (*quoting Allen*, 90 N.C. App. at 25, 367 S.E.2d at 689), the telephone call corroborated by observations at the scene, defendant's nervousness, and the discovery of a large amount of money on the two other men in the breezeway are articulable facts which establish a reasonable suspicion defendant "might be armed, dangerous and involved in criminal activ-

ity and justified the officer's search of [defendant]." *See Whitley*, 122 N.C. App. at 292, 468 S.E.2d at 612. Further, when, as here, an officer is engaged in a lawful search for weapons and he discovers an item which he can immediately identify as contraband, it is lawful for the officer to seize such item. *State v. Wilson*, 112 N.C. App. 777, 780, 437 S.E.2d 387, 388 (1993).

Because there is no legal, much less constitutional, distinction between *Whitley* and the present case, this Court is required to affirm the trial court's denial of defendant's motion to suppress. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36-37 (1989).

Accordingly, I respectfully dissent.