IN THE MATTER OF: LINDSAY ALLISON

No. COA00-705

(Filed 5 June 2001)

**1. Juveniles— delinquency—longer sentence than adult committing same offense—no equal protection violation—rational basis**

The trial court did not err by entering a new dispositional order that committed a juvenile to training school for a minimum of six months and N.C.G.S. § 7B-2513(a) was not unconstitutionally applied to the juvenile in violation of her equal protection rights even though an adult committing the same offense of unauthorized use of a motor vehicle in violation of N.C.G.S. § 14-72.2 would have received at most 120 days active punishment, because: (1) the differences are reasonably related to the purposes of the juvenile act to provide children with the needed supervision and control; and (2) the desire of the state to exercise its authority as parens patriae and to provide for the care and protection of its children supplies a compelling rational justification for the classification.

**2. Appeal and Error— preservation of issues—failure to argue in brief**

Although a juvenile contends the trial court's new disposition order setting her period of commitment violated her constitutional rights under the ex post facto clause as well as the Fifth, Sixth, Eight, and Fourteenth Amendments to the United States Constitution, and Article I, §§ 18, 23, 24, 27, and 35 of the North Carolina Constitution, the juvenile has abandoned this assignment of error by failing to argue these contentions in her brief. N.C. R. App. P. 28.

**3. Juveniles— delinquency—disposition level—training school**

The trial court did not err by relying on N.C.G.S. § 7B-2508(d) to raise a juvenile's Level 2 dispositional limit under N.C.G.S. § 7B-2508(f) to Level 3 in order to commit the juvenile to training school for her unauthorized use of a motor vehicle, because the juvenile's prior commitment to training school under the old juvenile code is equivalent to a Level 3 disposition under the new code.

IN RE ALLISON

[143 N.C. App. 586 (2001)]

**4. Juveniles— delinquency—credit for time served in detention pending hearing**

The trial court did not violate a juvenile's right to be free from double jeopardy or her rights to due process and equal protection by allegedly failing to give her credit for time served in detention prior to the 16 February 2000 disposition, because: (1) the juvenile was given credit for time served in detention pending the 16 February 2000 disposition hearing, which was applied toward her commitment term for violation of her conditional release; and (2) the juvenile was not entitled to receive similar credit toward her new commitment term under the new dispositional order when she was already credited for time served in conjunction with the violation of her conditional release.

Appeal by juvenile from orders entered 28 April 2000 by Judge Louis A. Trosch, Jr. in District Court, Mecklenburg County. Heard in the Court of Appeals 25 April 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Jane L. Oliver, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Anne M. Gomez, for the juvenile-appellant.*

WYNN, Judge.

This appeal arises from trial court orders committing the delinquent juvenile-appellant, L.M.A., for placement in a residential facility. The orders also provided that L.M.A. "is to be released to an appropriate placement in a secure residential inpatient treatment facility if and when one becomes available."

The record reveals that on 10 June 1998, L.M.A. was adjudicated delinquent for assault with a deadly weapon in violation of N.C. Gen. Stat. § 14-33(c)(1) (Supp. 1997); she was placed on juvenile probation on 6 October 1998. L.M.A. was again adjudicated delinquent on 11 December 1998 for unauthorized use of a motor vehicle in violation of N.C. Gen. Stat. § 14-72.2 (1993). A motion to review L.M.A.'s probation was apparently filed on 17 December 1998, although a copy of this motion does not appear in the record. On 29 January 1999, L.M.A. was once again adjudicated delinquent for (1) first-degree trespass in violation of N.C. Gen. Stat. § 14-159.12 (1993), and (2) damage to real property in violation of N.C. Gen. Stat. § 14-127 (1993).

The district court conducted a dispositional hearing on 2 February 1999, at which L.M.A. admitted the allegations in the 17 December 1998 motion for review. Following that hearing, the court extended the termination date of L.M.A.'s probation for an additional six months from 6 April 1999 until 6 October 1999. On 2 June 1999, the court conducted a hearing on another motion for review, filed 25 May 1999, alleging further probation violations by L.M.A. Based on L.M.A.'s admitted allegations in that motion for review, the district court found her in violation of her probation, and continued the disposition until 29 June 1999. That disposition hearing resulted in a court order committing L.M.A. to the Division of Youth Services for placement in a residential "training school" facility for an indefinite term not to exceed 450 days.

L.M.A. was conditionally released from training school on 22 September 1999. The conditions of her release required, among other things, that she (1) not violate any local, state, or federal law or otherwise commit any legal infraction, and (2) meet with a court counselor, notify said counselor of any home, school or community difficulties, and enroll in and attend a Charlotte Mecklenburg school.

A juvenile petition to declare L.M.A. a delinquent juvenile was filed on 15 November 1999, alleging that L.M.A. committed additional delinquent acts, including (1) obstructing and delaying a police officer in the discharge of his duties in violation of N.C. Gen. Stat. § 14-223 (1993), and (2) unauthorized use of a motor vehicle in violation of N.C. Gen. Stat. § 14-72.2; a motion for review was apparently filed alleging these same delinquent acts. A separate motion for review was filed alleging L.M.A.'s violation of her conditional release by her absence from school, tardiness, and cutting classes. At a hearing on both of these motions conducted on 24 November 1999, L.M.A. admitted her unauthorized use of a motor vehicle, and admitted being absent from school, cutting classes, and being tardy. The trial court adjudicated L.M.A. delinquent under the 15 November 1999 juvenile petition, ordered her detention pending a further disposition hearing, and scheduled a detention review hearing for 2 December 1999.

The trial court held several additional detention review hearings in December 1999. During such hearings, L.M.A. was given the choice of waiting in detention for an available placement in an inpatient treatment facility, or returning to training school to complete her commitment sentence; L.M.A. repeatedly indicated her desire to remain in detention until a treatment facility placement became avail-

IN RE ALLISON

[143 N.C. App. 586 (2001)]

able. Following the 2 and 13 December 1999 hearings, the trial court ordered that L.M.A. remain in detention pending disposition; however, the court further ordered that, if L.M.A. was accepted at The Willows, a residential treatment facility, prior to the disposition date, she was to be released to that placement.

The Willows announced that it would be closing, and alternative treatment plans were discussed at a 28 December 1999 disposition hearing; a detention hearing was set for 30 December to discuss a possible alternative placement at another facility. After the 30 December 1999 hearing, the trial court scheduled a further detention review hearing for 20 January 2000, but ordered that L.M.A. be released to placement in the Charter Pines Asheville treatment facility if such placement became available. As of the 20 January 2000 hearing, it appears from the record that no placement had become available, although it was believed that placement was forthcoming, and L.M.A. was retained in detention pending appropriate placement.

On 16 February 2000, the trial court once again held a detention hearing, and a dispositional hearing on the November 1999 motions for review alleging L.M.A.'s violation of her conditional release and the juvenile order adjudicating L.M.A. delinquent following the hearing on 24 November 1999. At the 16 February 2000 hearing, it was learned that the Charter Pines Asheville facility was also closing. Although other treatment options were discussed, the only other appropriate treatment facility possible was located in South Carolina, and no residential placement was available at that time. The trial court determined that keeping L.M.A. in detention pending placement in an inpatient treatment facility would be detrimental to her.

On 28 April 2000, the trial court entered two separate disposition and commitment orders, explaining:

> Given the modifications of the [applicable] law since July 1, 1999, separate orders are drawn for the violation of the conditional release under the old law and dispositional hearing for the charges of unauthorized use and resisting arrest under the new law.

The first order ("Old Disposition Order") concerned L.M.A.'s violation of her conditional release by her absence from school, tardiness and cutting classes, as alleged in the motion for review filed in November 1999. The second order ("New Disposition Order") concerned

L.M.A.'s adjudication of delinquency under the new law, pursuant to the 15 November 1999 juvenile petition and accompanying motion for review.

In the Old Disposition Order, the trial court found that L.M.A.'s behavior "constitutes a threat to persons or property in the community," and found that all treatment alternatives to commitment as prescribed in N.C. Gen. Stat. §§ 7A-647 through 7A-649 (repealed effective 1 July 1999) had been attempted unsuccessfully, or were considered but found to be inappropriate. The trial court concluded that committing L.M.A.:

> to the Division of Youth Services (now Office of Juvenile Justice) is the least restrictive dispositional alternative that is available and that is appropriate to meet the needs of the juvenile and the objectives of the State in exercising jurisdiction in this case.

Accordingly, the trial court ordered that:

> 1. [L.M.A.] be recommitted to the Division of Youth Services (now Office of Juvenile Justice), for placement in one of the residential facilities operated by the Division to finish the commitment term of an indefinite term not to exceed 450 days that was entered June 29, 1999.
>
> 2. She is to be released to an appropriate placement in a secure residential inpatient treatment facility if and when one becomes available. If a placement becomes available for her, she may be released to it from the residential facility in which she is housed.
>
> 3. While in the residential facility of DYS, intensive psychological services are to be provided to her as are available and as is consistent with the assessments hereto attached.
>
> 4. The Mecklenburg County Area Mental Health is to continue to provide [L.M.A.] with services.

In the New Disposition Order, the trial court found:

> 8. [L.M.A.] has been adjudicated delinquent for a violation of probation and unauthorized use of a motor vehicle. The maximum for a class 1 misdemeanor is 120 days. However, pursuant to [N.C. Gen. Stat. §] 7B-2513(a), a term of commitment to training school must be for at least six months.

9. The court also finds that [L.M.A.] needs intensive, long term and secure psychological/psychiatric treatment to modify her behavior. This treatment should be consistent with the attached psychological assessments. The juvenile should receive a substance abuse assessment and intensive substance abuse assessment. The Court notes that, pursuant to [N.C. Gen. Stat. §] 7B-2515, if [L.M.A.] is in a program of treatment, her stay can be, with proper notice, extended beyond that [] term of the original commitment.

The court thus concluded that L.M.A.'s commitment to the Office of Juvenile Justice is in her best interest, "while reflecting the needs of the community and its available resources." Therefore, the trial court ordered that:

1. [L.M.A.] be committed to the Office of Juvenile Justice, for placement in one of the residential facilities operated by the Office of Juvenile Justice to finish the commitment term of an indefinite term of at least six months and not to exceed [L.M.A.'s] 18th birthday unless otherwise maintained by N.C.G.S. 7B-2515.

2. [L.M.A.] is to be released to an appropriate placement in a secure residential inpatient treatment facility if and when one becomes available. If a placement becomes available for her, she may be released to it from the residential facility in which she is housed.

3. While in the residential facility of [the] Office of Juvenile Justice, intensive psychological services are to be provided to her as are available and as is consistent with the assessments hereto attached.

4. The Mecklenburg County Area Mental Health is to continue to provide [L.M.A.] with services.

L.M.A. appeals from both disposition orders, bringing forth eleven assignments of error for our consideration. We note preliminarily that she has abandoned assignments of error 1-5, 7 and 10 by failing to argue them in her brief. *See* N.C.R. App. P. 28 (2001); *see also State v. Rhyne*, 124 N.C. App. 84, 478 S.E.2d 789 (1996); *State v. Kirby*, 276 N.C. 123, 171 S.E.2d 416 (1970).

We note further that L.M.A.'s remaining assignments of error concern alleged errors that were not preserved by a timely request, objection or motion presented to the trial court. *See* N.C.R. App. P. 10(b)(1)

(2001). Nonetheless, certain errors may be reviewed on appeal despite the absence of an objection, exception or motion made in the trial court, including where it is alleged that:

> The sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law.

N.C. Gen. Stat. § 15A-1446(d)(18) (1997). Therefore, to the extent L.M.A.'s remaining assignments of error concern the alleged illegality of her sentence, we consider those assignments herein. *See id.*

[1] In assignment of error 6, L.M.A. contends that the trial court erred in entering the New Disposition Order, ordering her commitment to training school for a minimum of six months,

> on the ground this commitment is longer than the sentence an adult would receive for the same crime, and on the ground that the Court's action violated the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution, Article I, §§ 18, 19, 23, 24, 27, and 35 of the North Carolina Constitution, and North Carolina common and statutory law.

Similarly, in assignment of error 9, L.M.A. contends that the order imposing a mandatory six-month commitment to training school was error,

> on the ground the mandatory six month period for training school required by G.S. §§ 7B-2506(24), 7B-2508(e), and 7B-2513(a) is unconstitutional, and on the ground that the Court's action violated the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution, Article I, §§ 18, 19, 23, 24, 27, and 35 of the North Carolina Constitution, and North Carolina common and statutory law.

In support of these assignments of error in her brief, L.M.A. argues that her equal protection and due process rights were violated as her period of commitment to training school exceeded the sentence an adult could receive for committing the same offense. *See* U.S. Const. amends. V, XIV; N.C. Const. art. I, § 19. Specifically, L.M.A. argues,

> *In the instant case*, G.S. § 7B-2513(a), which provides that a juvenile who is committed to training school must be committed for at least six months, is unconstitutional.

(Emphasis added.)

IN RE ALLISON

[143 N.C. App. 586 (2001)]

L.M.A. does not contend, either in her assignments of error or in her brief, that N.C. Gen. Stat. §§ 7B-2506(24) (1999), 7B-2508(e) (1999) and 7B-2513(a) (1999) are facially unconstitutional. *See State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 281-82 (1998) (holding that a party challenging the facial constitutionality of a legislative act must show there are no circumstances under which the act would be valid); *see also United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed.2d 697, 707 (1987). Furthermore, she has abandoned these assignments of error insofar as she contends that (1) the trial court's action violated her due process rights, as well as the Sixth and Eighth Amendments to the United States Constitution, and Article I, §§ 18, 23, 24, 27 and 35 of the North Carolina Constitution, and (2) N.C. Gen. Stat. §§ 7B-2506(24) and 7B-2508(e) are unconstitutional as applied to her in the case at bar, by failing to argue these contentions in her brief. *See* N.C.R. App. P. 28; *Rhyne*, 124 N.C. App. 84, 478 S.E.2d 789; *Kirby*, 276 N.C. 123, 171 S.E.2d 416. We therefore limit our discussion of this assignment of error to a consideration of whether N.C. Gen. Stat. § 7B-2513(a) was unconstitutionally applied to L.M.A. in the instant case, in violation of her equal protection rights. *See* U.S. Const. amends. V, XIV; N.C. Const. art. I, § 19. For the reasons that follow, we find that it was not.

1998 N.C. Sess. Laws ch. 202 repealed the former North Carolina Juvenile Code, Articles 41 through 59 of Chapter 7A of the General Statutes, N.C. Gen. Stat. §§ 7A-516 *et seq.* (1995), effective 1 July 1999. The new Juvenile Code enacted by 1998 Sess. Laws ch. 202, codified in Chapter 7B of the General Statutes, N.C. Gen. Stat. § 7B-100 *et seq.* (1999), became effective 1 July 1999, and applies to petitions filed and reviews commenced on or after that date. *See* 1998 Sess. Laws ch. 202. As the New Disposition Order concerns L.M.A.'s adjudication of delinquency based upon a juvenile petition filed on 15 November 1999, that order is governed by the new Juvenile Code, N.C. Gen. Stat. § 7B-100 *et seq.*

As noted above, at the hearing on 24 November 1999, L.M.A. admitted to the unauthorized use of a motor vehicle as alleged in the 15 November 1999 juvenile petition, and the trial court subsequently adjudicated her delinquent. In accordance therewith, the trial court committed L.M.A. to the Office of Juvenile Justice for the completion of an indefinite term of at least six months, pursuant to N.C. Gen. Stat. § 7B-2513(a), which provides in relevant part:

Pursuant to G.S. 7B-2506 [concerning disposition alternatives] and G.S. 7B-2508 [concerning dispositional limits], the court may

commit a delinquent juvenile who is at least 10 years of age to the Office for placement in a training school. Commitment shall be for an indefinite term of at least six months. In no event shall the term exceed:

. . .

(3) The eighteenth birthday of the juvenile if the juvenile has been committed to the Office for an offense other than an offense that would be a Class A, B1, B2, C, D, or E felony if committed by an adult.

N.C. Gen. Stat. § 7B-2513(a).

L.M.A. argues that this statute, as applied to her, is unconstitutional insofar as it results in a harsher sentence being imposed upon her than would be imposed upon an adult having committed the same offense, to-wit, unauthorized use of a motor vehicle in violation of N.C. Gen. Stat. § 14-72.2, which constitutes a Class 1 misdemeanor. *See* N.C. Gen. Stat. § 14-72.2. Pursuant to N.C. Gen. Stat. § 15A-1340.23 (1997), the most severe sentence possible for an adult convicted of this crime is 120 days active punishment. *See* N.C. Gen. Stat. § 15A-1340.23(c). Because of the disparity in sentencing between similarly-situated adults and juveniles, L.M.A. contends that N.C. Gen. Stat. § 7B-2513 was unconstitutionally applied to her. *See State v. Benton*, 276 N.C. 641, 660, 174 S.E.2d 793, 805 (1970) (stating that a statute denies equal protection where it prescribes disparate punishment for the same offense committed under the same circumstances by similarly-situated persons).

This Court has noted previously that:

The equal protection clauses of the United States Constitution and the Constitution of North Carolina require that in making classifications . . . there be no discrimination, that is, there must be some reasonable relation between the class created and the legislative end to be obtained.

*Ledwell v. Berry*, 39 N.C. App. 224, 225, 249 S.E.2d 862, 863 (1978), *disc. review denied*, 296 N.C. 585, 254 S.E.2d 35 (1979). The test to be applied to a statute challenged on the basis of equal protection "is whether the difference in treatment made by the law has a reasonable basis in relation to the purpose and subject matter of the legislation." *Guthrie v. Taylor*, 279 N.C. 703, 714, 185 S.E.2d 193, 201 (1971), *cert. denied*, 406 U.S. 920, 32 L. Ed. 2d 119 (1972).

## IN RE ALLISON

[143 N.C. App. 586 (2001)]

In *In re: Burrus*, 275 N.C. 517, 169 S.E.2d 879 (1969), *aff'd sub nom. McKeiver v. Pennsylvania*, 403 U.S. 528, 29 L. Ed. 2d 647 (1971), our Supreme Court considered a challenge to the constitutionality of the then-existing North Carolina Juvenile Court Act (Article 2 of Chapter 110 of the General Statutes). *See* N.C. Gen. Stat. § 110-21 *et seq*. In upholding the constitutionality of the Act, our Supreme Court stated:

> Appellants seek to equate the protective custody of children under the juvenile laws of the State with the trial and punishment of adults under the criminal statutes. By so doing, they conclude that since a juvenile may be committed "during minority" (unless sooner released by the proper authorities) he is required "to serve a longer period of confinement" than the criminal law visits upon an adult for violation of the same statute. Therefore, they argue, the juvenile statutes are constitutionally unsound. The equation is a *non sequitur*; its rationale fallacious. Nothing in [*In re Gault*, 387 U.S. 1, 18 L. Ed. 2d 527 ((1967)] or other recent federal decisions supports it. There are still many valid distinctions between a criminal trial and a juvenile proceeding.

*Burrus*, 275 N.C. at 533, 169 S.E.2d at 889. *See In re Whichard*, 8 N.C. App. 154, 157-58, 174 S.E.2d 281, 283 (1970), *cert. denied*, 403 U.S. 940, 29 L. Ed. 2d 719 (1971) (rejecting the appellant's claim that the Juvenile Court Act is unconstitutional because it "authorizes a longer period of confinement for a juvenile who violates a criminal statute than for an adult who violates the same statute").

Nearly thirty years ago, in *In re Walker*, 282 N.C. 28, 191 S.E.2d 702 (1972), our Supreme Court rejected an equal protection challenge to certain juvenile code provisions, stating:

> The purpose of the Juvenile Court Act "is not for the punishment of offenders but for the salvation of children." *Commonwealth v. Fisher*, 213 Pa. 48, 62 A. 198 (1905). The Act treats "delinquent children not as criminals, but as wards and undertakes . . . to give them the control and environment that may lead to their reformation and enable them to become law-abiding and useful citizens, a support and not a hindrance to the commonwealth." *State v. Burnett*, 179 N.C. 735, 102 S.E. 711 (1920). The State must exercise its power as "*parens patriae* to protect and provide for the comfort and well-being of such of its citizens as by reason of infancy . . . are unable to take care of themselves." [*County of*] *McLean v. Humphreys*, 104 Ill. 378 (1882). Thus, juveniles are in

IN RE ALLISON

[143 N.C. App. 586 (2001)]

need of supervision and control due to their inability to protect themselves. In contrast, adults are regarded as self-sufficient.

Therefore, the classification here challenged is based on differences between adults and children; and there are so many valid distinctions that the basis for challenge seems shallow. These differences are "reasonably related to the purposes of the Act"—that is, to provide children the needed supervision and control. Consequently, the classification does not offend the Equal Protection Clause under the test laid down in *Morey v. Doud*, [354 U.S. 457, 1 L. Ed. 2d 1485 (1957)]; and even if it be said that the classification here challenged affects "fundamental interests" or is "inherently suspect," it is our view that the desire of the State to exercise its authority as *parens patriae* and provide for the care and protection of its children supplies a "compellingly rational" justification for the classification.

*Walker*, 282 N.C. at 39, 191 S.E.2d at 709-10. Our Supreme Court concluded that the challenged statutes "do not violate the Equal Protection Clause by classifying and treating children differently from adults." *Id.* at 39, 191 S.E.2d at 710. In this, our first opportunity to consider the constitutionality of N.C. Gen. Stat. § 7B-2513(a), we similarly conclude that there exists a rational basis for the legislature's disparate treatment of adults and children, and that G.S. § 7B-2513(a) was not unconstitutionally applied to L.M.A. in the instant case in derogation of her equal protection rights. *See Burrus; Walker*.

**[2],[3]** Next, in connection with the New Disposition Order, L.M.A. assigns as error:

The Juvenile Court's disposition committing [L.M.A.] to training school for at least six months, on the ground the period of commitment was not authorized under G.S. § 7B-2507, on the ground the period of commitment violated the ex post facto clause, and on the ground that the Court's action violated the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution, Article I, §§ 18, 19, 23, 24, 27, and 35 of the North Carolina Constitution, and North Carolina common and statutory law.

L.M.A. has abandoned this assignment of error insofar as she contends that the period of commitment imposed violated her constitutional rights under the *ex post facto* clause, as well as the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States

Constitution, and Article I, §§ 18, 23, 24, 27 and 35 of the North Carolina Constitution, by failing to argue these contentions in her brief. *See* N.C.R. App. P. 28; *Rhyne*, 124 N.C. App. 84, 478 S.E.2d 789; *Kirby*, 276 N.C. 123, 171 S.E.2d 416. Instead, L.M.A. argues in her brief that the trial court "erred in committing L.M.A. to training school because she was not eligible for such a commitment" under the dispositional limits imposed by N.C. Gen. Stat. § 7B-2508 (1999). We disagree.

Under the Juvenile Code, the trial court must consider the juvenile's delinquency history level as well as the classification of the current offense in determining the appropriate disposition limit in a juvenile proceeding. *See* N.C. Gen. Stat. § 7B-2508. N.C. Gen. Stat. § 7B-2507 (1999) provides the manner for determining the juvenile's delinquency history level, stating:

> The delinquency history level for a delinquent juvenile is determined by calculating the sum of the points assigned to each of the juvenile's prior adjudications and to the juvenile's probation status, if any, that the court finds to have been proved in accordance with this section.

N.C. Gen. Stat. § 7B-2507(a). Based upon the delinquency history level determined pursuant to G.S. § 7B-2507, and the offense classification for the current offense, N.C. Gen. Stat. § 7B-2508 then dictates the dispositional limits available.

In conjunction with L.M.A.'s adjudication of delinquency on 24 November 1999 for her unauthorized use of a motor vehicle, the trial court completed a dispositional level worksheet pursuant to N.C. Gen. Stat. §§ 7B-2507 and 7B-2508. Therein, the court found that the offense committed was a Class 1 misdemeanor, a minor offense. *See* N.C. Gen. Stat. § 14-72.2(b). The trial court found further that L.M.A. had a "high" prior delinquency history level, pursuant to G.S. § 7B-2507. Neither L.M.A. nor the State dispute these determinations.

According to the dispositional chart in G.S. § 7B-2508(f), a high delinquency history combined with a minor offense, as in the instant case, results in a Level 2 dispositional limit. *See* N.C. Gen. Stat. § 7B-2508(f) (1999). A Level 2 dispositional limit—or intermediate disposition—does not provide for commitment of the juvenile to training school as one of the "intermediate" dispositional alternatives. *See* N.C. Gen. Stat. §§ 7B-2506(1)-(23) (1999); 7B-2508(d) (1999). However, N.C. Gen. Stat. § 7B-2508(d) provides that,

[N]otwithstanding any other provision of this section, a court may impose a Level 3 disposition if the juvenile has previously received a Level 3 disposition in a prior juvenile action. In determining which dispositional alternative is appropriate, the court shall consider the needs of the juvenile as indicated by the risk and needs assessment contained in the predisposition report, the appropriate community resources available to meet those needs, and the protection of the public.

N.C. Gen. Stat. § 7B-2508(d). The trial court apparently relied upon this language to raise L.M.A.'s dispositional limit to Level 3, which requires the court to "commit the juvenile to the Office for placement in a training school in accordance with G.S. 7B-2506(24)."

L.M.A. contends that the trial court erred in elevating her disposition level to Level 3, arguing that she was only eligible for a Level 2 disposition. She argues that her "prior commitment to training school under the old code did not involve any of [the] specific circumstances [warranting a Level 3 disposition] and is not equivalent [to] a prior Level 3 disposition." That is, had her previous disposition under the old juvenile code instead been carried out under the new juvenile code, L.M.A. argues that she would not have been eligible for a Level 3 disposition in that instance. In essence, L.M.A. argues that her prior commitment to training school does not constitute a "Level 3 disposition in a prior juvenile action" sufficient to warrant elevating her current disposition level to Level 3, since no "Level 3" dispositions existed under the old juvenile code. Regardless of how it is stated, we find this argument to be without merit.

In addition to providing for treatment and evaluation under N.C. Gen. Stat. § 7B-2502 (1999), the new Juvenile Code provides for twenty-four dispositional alternatives. See N.C. Gen. Stat. § 7B-2506 (1999). Only one of the alternatives provides for commitment of the juvenile to training school. See N.C. Gen. Stat. § 7B-2506(24). N.C. Gen. Stat. § 7B-2508 establishes three dispositional levels, only one of which, Level 3, provides for commitment of a juvenile for placement in a training school. Thus, it is apparent that a commitment of a juvenile to training school under the old juvenile code is equivalent to a Level 3 disposition under the new code. See N.C. Gen. Stat. § 7B-2508(f). We, therefore, conclude that the trial court committed no error in using L.M.A.'s previous commitment to training school as a basis for imposing a Level 3 disposition in the instant case. See N.C. Gen. Stat. § 7B-2508(d).

**[4]** Lastly, with respect to both the Old Disposition Order and the New Disposition Order, L.M.A. assigns as error:

> The failure of the Trial Court to give [L.M.A.] credit for "time served" when committing [her] to training school on the ground the Court's action constituted double jeopardy, on the ground the juvenile commitment statutes are unconstitutional on their face, and on the ground that the Court's action violated the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution, Article I, §§ 18, 19, 23, 24, 27, and 35 of the North Carolina Constitution, and North Carolina common and statutory law.

In her brief, L.M.A. argues that the trial court failed to give her credit for "time served" in detention prior to disposition, in violation of her right to be free from double jeopardy, and in violation of her rights to due process and equal protection of the laws. *See* U.S. Const. amends. V, XIV; N.C. Const. art. I, § 19. She contends that:

> *In the instant case*, N.C. Gen. Stat. § 7A-652 (repealed July 31, 1999) and G.S. § 7B-2508, which provide that a juvenile may be committed to training school without credit for time served in detention, are unconstitutional.

(Emphasis added.)

This amounts to an argument that N.C. Gen. Stat. § 7A-652 and N.C. Gen. Stat. § 7B-2508 were applied unconstitutionally to L.M.A. As such, she has abandoned this assignment of error to the extent it contends that the juvenile commitment statutes are facially unconstitutional; additionally, L.M.A. has abandoned this assignment of error insofar as she contends that the trial court's action violated the Sixth and Eighth Amendments to the United States Constitution, and Article I, §§ 18, 23, 24, 27 and 35 of the North Carolina Constitution, by failing to argue these contentions in her brief. *See* N.C.R. App. P. 28; *Rhyne*, 124 N.C. App. 84, 478 S.E.2d 789; *Kirby*, 276 N.C. 123, 171 S.E.2d 416. We therefore limit our discussion to a consideration of her argument that the trial court unconstitutionally failed to give her credit for time served in detention prior to her disposition hearing. We find this argument to be without merit.

It appears from the record that L.M.A. was committed on 29 June 1999 to the Division of Youth Services for placement in a training school. She was conditionally released from training school on 22 September 1999, after being detained for 86 days, and was not detained again until the completion of the 24 November 1999 hearing,

at which she was adjudicated delinquent. Thereafter, L.M.A. was detained until the dispositional hearing on 16 February 2000, for a total of 85 days. The transcript from the disposition hearing indicates that L.M.A. was given credit for this time served while in detention pending the 16 February 2000 hearing. As of the 16 February 2000 hearing, L.M.A. had therefore been detained for 171 days, for which she was given credit toward her commitment for violating her conditional release. Furthermore, the trial court's order (Old Disposition Order) *recommits* L.M.A. to the Division of Youth Services "to *finish the commitment term* . . . that was entered June 29, 1999." (Emphasis added.) L.M.A. was clearly given credit for time served in detention pending the 16 February 2000 disposition hearing, which was applied toward her commitment term for violation of her conditional release.

In addition, N.C. Gen. Stat. § 15-196.1 (Supp. 1998) provides:

The minimum and maximum term of a sentence shall be credited with and diminished by the total amount of time a defendant has spent, committed to or in confinement in any State or local correctional, mental or other institution as a result of the charge that culminated in the sentence. The credit provided shall be calculated from the date custody under the charge commenced and shall include credit for all time spent in custody pending trial, trial de novo, appeal, retrial, or pending parole, probation, or post-release supervision revocation hearing: *Provided, however, the credit available herein shall not include any time that is credited on the term of a previously imposed sentence to which a defendant is subject.*

N.C. Gen. Stat. § 15-196.1 (emphasis added). Accordingly, as L.M.A. was credited for time served in conjunction with the violation of her conditional release, she was not also entitled to receive similar credit toward her new commitment term under the New Disposition Order. Therefore, L.M.A.'s argument that she was not given credit for time served in detention pending the 16 February 2000 disposition hearing is without merit.

As the defendant's assignments of error are without merit, we affirm the trial court's handling of her case.

Affirmed.

Judges TIMMONS-GOODSON and HUDSON concur.