STATE OF NORTH CAROLINA v. JAMES EARL BUIE

No. 73

(Filed 20 April 1979)

1. Criminal Law § 29— mental competency to stand trial—supporting evidence

The trial court's conclusion that defendant was competent to stand trial was supported by the expert opinion testimony of a psychiatrist that defendant was competent to stand trial as a result of receiving medication.

2. Searches and Seizures § 12— stop and frisk—reasonable grounds

An officer had reasonable grounds to stop and frisk defendant, and stolen property found on defendant's person was admissible in evidence, where the officer had received a report of a burglary; he saw defendant shortly afterward, around 4:30 a.m., near the crime scene; defendant roughly matched the description of the suspect; defendant's clothing was wet as if he had been running or perspiring heavily; defendant could not produce identification, became nervous and began fumbling through his pockets; the officer became concerned that defendant might have a weapon and frisked him; and the officer noted a hard bulge in defendant's left front pocket, reached in and pulled out the object and discovered it to be a watch stolen during the burglary.

Justices BRITT and BROCK did not participate in the consideration or decision of this case.

BEFORE *Judge Giles Clark* at the 3 October 1977 Criminal Session of CUMBERLAND Superior Court and on bills of indictment proper in form, defendant was convicted of first degree burglary and felonious larceny. He was sentenced to imprisonment for life on the burglary conviction and ten years on the felonious larceny conviction, the sentences to run concurrently. We allowed a motion to bypass the Court of Appeals on the felonious larceny conviction. This case was argued as No. 35 at the Spring Term 1978.

*Rufus L. Edmisten, Attorney General, by Joan H. Byers, Assistant Attorney General, for the state.*

*Gregory A. Weeks, Attorney for defendant.*

EXUM, Justice.

Defendant's principal assignments of error challenge the trial court's finding that he was competent to stand trial and its denial of his motion to suppress certain evidence on the ground that it was the fruit of an allegedly illegal search. We conclude that the trial court was correct in both these rulings as well as in denying defendant's motions to set aside the verdict and to arrest judgment.

The state's evidence tends to show that at approximately 4:10 a.m. on the morning of 7 October 1974, Mrs. Martha DeGlandon awoke to find a man standing by her bedside in her suite in the Downtowner Motor Inn in Fayetteville. She screamed and the man ran from the suite. Afterwards, she and her husband found they were missing two watches, a ring and around $100.00 in cash. They immediately called the police. Shortly thereafter, Officer Marable of the Fayetteville Police stopped defendant on a street near the Downtowner. Upon frisking defendant he found the two watches and the ring as well as $700.00 in cash, and a motel passkey.

Defendant took the stand and denied he was the intruder. He said a man named James Johnson had given him the stolen items to keep and that he had the $700.00 on his person because he was supposed to make a car payment the next day.

[1] Defendant's first assignment of error challenges the trial court's determination that he was competent to stand trial. At defense counsel's request, the trial court held a hearing on the question of defendant's capacity to proceed, as required by G.S. 15A-1002(b)(3).[1] Two witnesses testified at this hearing, defendant and Dr. Timothy Gridley, a psychiatrist, who had been treating

---

1. G.S. 15A-1002(b)(3) reads, in pertinent part:

   "When the capacity of the defendant to proceed is questioned, the court:

   . . . .

   (3) Must hold a hearing to determine defendant's capacity to proceed."

defendant for approximately one week before the trial. Defendant testified that he was aware he was charged with first degree burglary but said he did not feel he would be able to assist in his defense because he was too disturbed at the prospect of having to stand trial. Dr. Gridley stated that in his opinion defendant suffered from paranoid schizophrenia. He added, however, that defendant's condition was under control as a result of medication and that he believed without reservation that defendant was capable of proceeding with trial and of assisting counsel in his defense. The trial court found facts consistent with Dr. Gridley's testimony and held that defendant was capable of proceeding with trial.

"The test of a defendant's mental capacity to stand trial is whether he has, at the time of trial, the mental capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to cooperate with his counsel to the end that any available defense may be interposed." *State v. Cooper*, 286 N.C. 549, 565, 213 S.E. 2d 305, 316 (1975).[2] The question of a defendant's capacity to proceed may be raised at any time. G.S. 15A-1002(a). Defendant here was emotional and obviously upset at the prospect of being tried. There was, however, competent, uncontradicted expert opinion that he was capable of standing trial. This opinion was based on personal observation of defendant and was clearly sufficient to support the trial court's conclusion that defendant was capable of proceeding. The additional fact that defendant was competent only as a result of receiving medication does not require a different result. *State v. Potter*, 285 N.C. 238, 204 S.E. 2d 649 (1974).

Defendant's first assignment of error is overruled.

[2] Defendant next assigns as error the denial of his motion to suppress evidence seized from his person on 7 October 1974 and testimony concerning that seizure. A voir dire was held pursuant to this motion, after which the trial court found facts consistent with the testimony below and concluded that defendant's motion should be denied.

---

2. As set out in G.S. 15A-1001, the test is whether "by reason of mental illness or defect [the defendant] is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner."

State v. Buie

The state's evidence on voir dire tended to show Mrs. DeGlandon told Officer J. D. Harrell that the intruder in her room was a black male wearing dark clothing, approximately 5' 11" tall and weighing about 190 pounds. She said he might have had a moustache but she wasn't sure. The DeGlandons also told Officer Harrell they were missing a Seiko watch with the engraving "Love, Martha" on it, a Timex watch, a University of Texas class ring and over $100.00 in cash.

Officer Harrell transmitted this information over police radio. This transmission was heard by Officer Marable.

About five to ten minutes later Officer Marable saw defendant near the Downtowner Motor Inn. Defendant fit the description of the intruder except that he was wearing a gold-colored leisure suit. On closer observation Officer Marable noted that defendant's T-shirt was wet as if he had been running or perspiring heavily. Officer Marable then asked him for some identification. Defendant pulled out his wallet and fumbled through it for 15 to 20 seconds. He then started fumbling through his pockets and appeared nervous. Officer Marable became concerned as a result of this behavior and worried that defendant might have a weapon. He patted defendant down and noted a hard bulge in defendant's left front pocket. He reached in and pulled it out and discovered it to be one of the watches stolen from the DeGlandons.

Defendant argues that under these facts Officer Marable did not have reasonable grounds to stop and frisk him. "[I]f the totality of circumstances affords an officer reasonable grounds to believe that criminal activity may be afoot, he may temporarily detain the suspect. If, after the detention, his personal observations confirm his apprehension that criminal activity may be afoot and indicate that the person may be armed, he may then frisk him as a matter of self-protection." *State v. Streeter*, 283 N.C. 203, 210, 195 S.E. 2d 502, 507 (1973). Here Officer Marable had received a report of a burglary. He saw defendant shortly afterward, around 4:30 a.m., near the scene of the crime. Defendant roughly matched the description of the suspect. His clothing was wet as if he had been running or perspiring heavily. He could not produce identification, became nervous and began fumbling through his pockets. Officer Marable became concerned that

defendant might have a weapon and frisked him. Under these circumstances, we cannot say that Officer Marable was unjustified in stopping defendant or that the concern which led to his frisking defendant was unreasonable.

Defendant's second assignment of error is overruled.

Defendant's third and fourth assignments of error relate to the trial court's denials of motions to set aside the verdict and to arrest judgment. Defendant moved to set aside the verdict (1) because the verdict was contrary to the evidence and (2) for errors assigned and to be assigned. There was evidence here to support the conviction; therefore it was within the trial court's discretion to grant or deny defendant's motion to set aside the verdict as contrary to the weight of the evidence. *State v. Leigh*, 278 N.C. 243, 179 S.E. 2d 708 (1971). There is no showing that the court abused its discretion; nor did the errors assigned by defendant compel the trial court to set aside the verdict on that ground. With regard to the motion to arrest judgment, it could have been properly granted only if there were some defect or error on the face of the record proper. *State v. Kirby*, 276 N.C. 123, 171 S.E. 2d 416 (1970). There was none here.

Defendant's third and fourth assignments of error are overruled.

No error.

Justices BRITT and BROCK did not participate in the consideration or decision of this case.