STATE OF NORTH CAROLINA, Plaintiff v. HARRY LEE BOWMAN, Defendant

No. COA07-1518

(Filed 7 October 2008)

**1. Search and Seizure— probable cause—collective knowledge of officers**

The collective knowledge of a group of law enforcement officers may be imputed to the officer who initiates a vehicle search when the officer initiating the search does not testify and there is no evidence that the officer initiating the search was instructed to do so by another officer who had the requisite probable cause to search.

**2. Criminal Law— competency to stand trial—waiver of hearing**

Defendant waived his statutory right to a hearing on his mental competency to stand trial by his failure to assert that right at trial. N.C.G.S. § 15A-1001(a); N.C.G.S. § 15A-1002(a) and (b).

**3. Criminal Law— competency to stand trial—court's duty to conduct hearing sua sponte**

The trial court is not required to conduct a hearing sua sponte on defendant's mental competency to stand trial when there is no substantial evidence that defendant is incompetent and any evidence of incompetency is outweighed by evidence of defendant's competency.

**4. Criminal Law— competency to stand trial—hearing by court sua sponte not required**

A statement by defendant's wife that defendant doesn't have the capability of making a decision due to his cognitive mind brain injury did not require the trial court to order a competency hearing sua sponte where the wife's statement was unsworn, her potential for bias was self-evident, and there was substantial evidence that defendant was competent to stand trial, including his attorney's statement that defendant was able to assist in his defense, defendant's lucid and coherent testimony the next day on both direct and cross-examination, and defendant's testimony that he understood the habitual felon charge against him and his waiver of his right to have the jury determine that issue.

Appeal by defendant from judgment entered on or about 30 August 2007 by Judge Howard E. Manning, Jr. in Alamance County Superior Court. Heard in the Court of Appeals 9 June 2008.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General, J. Allen Jernigan, for the State.*

*Robert A. Hassell and Dawn D. Johnson for defendant-appellant.*

STROUD, Judge.

This appeal presents two questions for review: (1) whether the collective knowledge of a group of law enforcement officers may be imputed to the officer who initiates a vehicle search when the officer initiating the search does not testify and there is no evidence that

the officer initiating the search was instructed to do so by another officer who had requisite probable cause to search; and (2) whether the trial court must conduct a competency hearing *sua sponte* on defendant's mental competence when there is no substantial evidence that defendant is incompetent and any evidence of incompetence is outweighed by evidence of defendant's competence. We answer the first question, which appears to be a legal question of first impression in North Carolina, affirmatively and the second, which is essentially a factual question based on settled law, negatively. Accordingly, for the reasons which follow, we find no error in defendant's convictions and sentence.

## I. Factual Background

On 17 July 2003, a law enforcement team led by Alamance County Sheriff Terry Johnson ("Sheriff Johnson") and including Alamance County Deputies Ricky Putnam ("Deputy Putnam") and Jeremiah Richardson ("Deputy Richardson") and Graham Police Officer Clint Williams ("Officer Williams") conducted surveillance at the BB&T bank in Graham, Alamance County, after learning that Fred Swain ("Swain") planned to sell a controlled substance in the parking lot. Swain arrived around 10:25 a.m., in a green Pontiac Firebird driven by defendant Harry Lee Bowman, at the Wachovia bank parking lot next to the BB&T parking lot. Deputy Putnam and Deputy Richardson watched Swain exit the vehicle and walk to the adjacent BB&T bank. Deputy Putnam approached Swain in the BB&T bank parking lot. Swain had 100 pills of the controlled substance Oxycodone on his person.

Sheriff Johnson radioed other officers participating in the operation to block in the Firebird automobile to prevent its exit. After taking Swain into custody, Deputy Putnam proceeded to the Firebird where a canine handled by Officer Williams had already alerted on a travel bag in the backseat. A search of the travel bag revealed a shaving kit which contained, *inter alia*, medications prescribed to defendant, defendant's credit cards, and a shaving cream bottle with a false bottom. The shaving cream bottle contained marijuana and cocaine. Defendant was arrested.

On or about 18 August 2003, the Alamance County Grand Jury indicted defendant for possession of cocaine, conspiracy to sell a controlled substance, keeping and/or maintaining a vehicle for keeping and/or selling the controlled substance Oxycodone, misdemeanor possession of marijuana, and possession of drug paraphernalia. On

28 March 2005, a superseding indictment charged defendant with possession of cocaine, conspiracy to sell Oxycodone, and conspiracy to deliver Oxycodone. The Grand Jury returned two additional superseding indictments on 13 November 2006. The first charged defendant with felony possession of cocaine and conspiracy to sell Oxycodone; the second charged defendant with keeping and/or maintaining a vehicle for the use, storage, and/or sale of Oxycodone, possession of up to one-half ounce of marijuana, and possession of drug paraphernalia. Defendant was also indicted for attaining the status of habitual felon.

On 27 August 2007, defendant moved to suppress all evidence gathered during the search on 17 July 2003. The trial court held a hearing and denied defendant's motion by order rendered in open court.

Defendant was tried on 28 August 2007 in Superior Court, Alamance County. Prior to jury selection, the State dismissed the charges of conspiracy and keeping and/or maintaining a vehicle for the use, storage, and/or sale of a controlled substance. The trial court dismissed the paraphernalia charge upon defendant's motion at the close of the State's evidence. The jury returned verdicts of guilty for one count of possession of cocaine and one count of possession of marijuana. Defendant stipulated that his prior criminal record met the statutory requirements for habitual felon status and waived his right to a jury trial on that issue. On 30 August 2007, the trial court found that a mitigated sentence was justified and accordingly sentenced defendant to a minimum of ninety months and a maximum of one hundred seventeen months imprisonment. On 31 October 2007, the trial court entered a written order denying defendant's motion to suppress. Defendant appeals.

## II. The Motion to Suppress

[1] In his first assignment of error, defendant argues that the trial court erred by denying his motion to suppress the evidence of cocaine and marijuana on the grounds that the warrantless search of his vehicle violated his Fourth Amendment rights. We disagree.

## A. Standard of Review

Appellate courts give deference to the findings made by the trial court on a motion to suppress evidence because "the trial judge . . . is in the best position to weigh the evidence, given that he has heard all of the testimony and observed the demeanor of the witnesses." *State*

*v. Hughes*, 353 N.C. 200, 207, 539 S.E.2d 625, 631 (2000). Therefore, "the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (citation and quotation marks omitted). "Although the trial court's findings of fact are generally deemed conclusive where supported by competent evidence, a trial court's conclusions of law regarding whether the officer had reasonable suspicion or probable cause to detain a defendant is reviewable *de novo*." *State v. Young*, 148 N.C. App. 462, 466, 559 S.E.2d 814, 818 (citation, quotation marks and brackets omitted), *disc. review denied and appeal dismissed*, 355 N.C. 500, 564 S.E.2d 233 (2002). In addition to being supported by the findings of fact, the trial court's "conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found." *State v. Parker*, 183 N.C. App. 1, 7, 644 S.E.2d 235, 240 (2007) (citation and quotation marks omitted).

B. Analysis

Defendant concedes that the trial court's findings of fact were supported by the evidence, but argues that the findings did not support the trial court's conclusions of law. Specifically, defendant argues:

> There is no finding or testimony that Officer Williams, when he commenced the vehicle search, knew or had been advised that Swain and the owner of Poppy's Store had previously arranged a drug deal. Nor was there other evidence which would allow the judge to reasonably infer that Officer Williams was instructed to search the vehicle by another officer who did have the requisite probable cause to search.
>
> . . . .
>
> [T]he total absence of facts . . . as to the basis for Officer Williams' own decision to search the vehicle can only lead to the conclusion that the State failed to prove that Officer Williams had a sufficient basis . . . for concluding that he had probable cause for the search.

We disagree with defendant.

"A search of a motor vehicle which is on a public roadway or in a public vehicular area is not in violation of the fourth amendment if it is based on probable cause, even though a warrant has not

been obtained." *State v. Isleib*, 319 N.C. 634, 638, 356 S.E.2d 573, 576 (1987) (finding probable cause to search a vehicle existed when a confidential informant described the appearance, route, passengers, and contraband inside the vehicle, and named the driver by her first name) (citing *United States v. Ross*, 456 U.S. 798, 809, 72 L. Ed. 2d 572, 584 [1982]). "Probable cause exists if the facts and circumstances within the knowledge of the officer were sufficient to warrant a prudent man in believing that the suspect had committed or was committing the offense." *State v. Hernandez*, 170 N.C. App. 299, 306, 612 S.E.2d 420, 425 (2005) (citation, quotation marks, brackets and parentheses omitted).

Probable cause need not necessarily arise within the knowledge of the arresting officer because "[p]robable cause . . . can rest upon the *collective* knowledge of the police, rather than solely on that of the officer who actually makes the arrest." *U.S. v. Pitt*, 382 F.2d 322, 324 (4th Cir. 1967) (emphasis in original). Stated another way, "when a group of agents in close communication with one another determines that it is proper to arrest an individual, the knowledge of the group that made the decision may be considered in determining probable cause, not just the knowledge of the individual officer who physically effected the arrest." *U.S. v. Laughman*, 618 F.2d 1067, 1072 n.3 (4th Cir. 1980), *cert. denied*, 447 U.S. 925, 65 L. Ed. 2d 1117 (1980).

At the hearing on the suppression motion *sub judice*, the trial court found the following undisputed facts from the testimony of Deputy Putnam and Deputy Richardson:

8. On [17 July 2003 Deputy] Putnam was in the village of Saxapahaw at a market called Poppy's Store in response to a tip that an individual named Jasper [sic] Swain would be in the store trying to sell drugs to the owner of the store.

. . . .

10. Around 8 am, Fred Swain entered the store, came straight to the counter without stopping, and tried to sell pills to the owner.

11. The owner [agreed to] meet [Swain] at the BB&T bank in Graham, NC approximately an hour and a half later.

. . . .

13. Deputies Putnam and Richardson immediately contacted the Sheriff and other team members. Surveillance was set up at the BB&T bank in Graham.

14. Officers were set up in the Suntrust Bank parking lot next to the BB&T, inside the bank itself, and at other locations.

15. Approximately 10:30 am a green in color Pontic [sic] Firebird convertible drove by the BB&T parking lot on Main [S]treet and pulled into the Wachovia Bank parking lot next door.

. . . .

18. Immediately after the [F]irebird backed in [to a parking spot], Jasper [sic] Swain got out of the passenger side, walked through a row of bushes in a curbed area separating the two parking lots, and approached the owner of Poppy's Store who was standing where he agreed . . . at the morning meeting with Mr. Swain.

. . . .

20. Mr. Swain had 100 oxycotin pills in a plastic bag on his person, the same controlled substance he had agreed to sell to the store owner.

21. At the same time, Sheriff Terry Johnson radioed [] another officer to pull in front of the [F]irebird until the "takedown" had been done.

. . . .

23. At the time Deputy Putnam approached the Firebird, a K-9 officer had already discovered a black leather shaving kit in the rear seat of the [F]irebird. The kit had a Barbasol saving cream can with a false bottom. There appeared to be marijuana and cocaine inside the can.

These facts support the trial court's conclusion that law enforcement had probable cause to search the Firebird in which defendant's cocaine and marijuana were found. The positive identification of Swain as the man who had tried to sell pills to the owner of Poppy's Store combined with his arrival at the appointed place "were sufficient to warrant a prudent man in believing that [Swain] had committed or was committing the offense." *Hernandez*, 170 N.C. App. at 306, 612 S.E.2d at 425. Thus, the team of law enforcement officers involved in the operation had probable cause to search the car in which Swain was riding and in which defendant and his cocaine and marijuana happened to be present. The fact that the officer who actually initiated the search of the vehicle and the officer who ordered

defendant's arrest did not testify at the suppression hearing is unavailing because the knowledge of Deputy Putnam and Deputy Richardson as part of the team investigating Swain's illegal activity was imputed to Officer Williams, the officer who initiated the search. Accordingly, we conclude the search of the Firebird automobile was made with probable cause.

### III. Competency to Stand Trial

Defendant next argues that the trial court erred by failing to order a hearing to determine defendant's competency to stand trial. We disagree.

A criminal defendant has a statutory right not to be tried for a crime when he is mentally incapacitated:

> No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner.

N.C. Gen. Stat. § 15A-1001(a) (2005). "The question of the capacity of the defendant to proceed may be raised at any time on motion by the prosecutor, the defendant, the defense counsel, or the court." N.C. Gen. Stat. § 15A-1002(a) (2005). In addition, the statute provides that "[w]hen the capacity of the defendant to proceed is questioned, the court shall hold a hearing to determine the defendant's capacity to proceed." N.C. Gen. Stat. § 15A-1002(b) (2005).

Construing these statutory provisions, our Supreme Court has "recognized that the trial court is only required to hold a hearing to determine the defendant's capacity to proceed *if* the question is raised." *State v. Badgett*, 361 N.C. 234, 259, 644 S.E.2d 206, 221 (emphasis in original) (citation and quotation marks omitted), *cert. denied*, —— U.S. ——, 169 L. Ed. 2d 351 (2007). Thus, a defendant's "statutory right to a competency hearing is waived by the failure to assert that right at trial." *Badgett*, 361 N.C. at 259, 644 S.E.2d at 221 (citations omitted).

[2] In the record *sub judice*, there is no evidence that defendant or his counsel raised any question or made any motion as to defendant's capacity to proceed at any point during the trial. Accordingly, we hold defendant waived his statutory right to a competency hearing by the failure to assert that right at trial. *See id.*

**[3]** "Nevertheless, under the Due Process Clause of the United States Constitution, a criminal defendant may not be tried unless he is competent[,]" *Badgett*, 361 N.C. at 259, 644 S.E.2d at 221 (citation, quotation marks and brackets omitted), and "[i]t is beyond question that a conviction cannot stand where the defendant lacks capacity to defend himself[,]" *State v. King*, 353 N.C. 457, 467, 546 S.E.2d 575, 585 (2001) (citations omitted), *cert. denied*, 534 U.S. 1147, 151 L. Ed. 2d 1002 (2002). Therefore, "a trial court has a constitutional duty to institute, *sua sponte*, a competency hearing *if there is substantial evidence before the court* indicating that the accused may be mentally incompetent." *Badgett*, 361 N.C. at 259, 644 S.E.2d at 221 (emphasis in original) (citation, quotation marks and brackets omitted).

A defendant is mentally incompetent if he lacks "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or lacks "a rational as well as factual understanding of the proceedings against him." *Id.* (citation and quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Denny*, 361 N.C. 662, 664-65, 652 S.E.2d 212, 213 (2007) (citation and quotation marks omitted).

**[4]** Defendant argues that the trial court should have ordered a competency hearing *sua sponte* based on the trial court's colloquy with defendant's wife just after the trial court rendered its order denying defendant's motion to suppress:

[DEFENDANT'S WIFE]: Sir, I would just like to let you know that considering his cognitive mind, brain injury, that he doesn't have the capability of making a decision, and that his health is so that I have to do everything for him. And I don't think he would make it away from me, and I'm very bothered by that. Judge, we have doctors saying that.

. . . .

COURT: . . . [I]f you don't think he's clicking on enough syllables, cylinders to help himself, then I will send him to, have psychiatric screening and further screening, and then they're going to come back and report on his mental status, 'cause I'm not going to participate in the trial of somebody who's short changed, if that's what the situation is.

Defendant argues that the statement of defendant's wife is substantial evidence of defendant's mental incapacity. However, the statement from defendant's wife is not substantial evidence which would have required the trial court to order a competency hearing *sua sponte. See King*, 353 N.C. at 467, 546 S.E.2d at 585 (evidence of past treatment for depression and suicidal tendencies, standing alone, does not constitute substantial evidence of mental incapacity). The statement is unsworn and made by an individual whose potential for bias is self-evident.

Furthermore, this evidence is outweighed by substantial evidence in the record indicating that defendant was competent to stand trial. *See Badgett*, 361 N.C. at 259-60, 644 S.E.2d at 221 (evidence that the defendant interacted appropriately with his lawyers and with the court and strongly understood the proceedings against him outweighed evidence that the defendant desired the death penalty and verbally attacked the prosecutor during sentencing). After the colloquy between the trial court and defendant's wife, the trial court turned to defendant's attorney:

COURT: If you feel like he's able to assist you in his defense.

[DEFENDANT'S ATTORNEY]: I do.

COURT: We're going to go forward. You either take the choice or you send him away for a long, long time or he goes and does whatever the deal is. I don't care which. But I'll, we will deal with that in the morning one way or the other.

Defendant testified in his own defense the next day. His testimony was lucid and coherent in its entirety on both direct and cross-examination. Defendant also testified expressly that he understood the habitual felon charge against him when he stipulated to his status as an habitual felon and waived his right to have a jury determine that issue:

COURT: All right. Do you, do you understand, Mr. Bowman, by making these stipulations and admitting to these three charges that you have with today's conviction, have obtained the status as an habitual felon? Do you understand that?

. . . .

And that by making these stipulations, you have waived, are waiving your right to have this jury determine that you've been con-

IN RE N.A.L. & A.E.L., JR.

[193 N.C. App. 114 (2008)]

victed of these three felonies that we have just gone over. Do you understand that?

DEFENDANT: Yes.

We conclude that the record does not contain substantial evidence that defendant lacked "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or lacked "a rational as well as factual understanding of the proceedings against him." *Badgett*, 361 N.C. at 259, 644 S.E.2d at 221 (citation and quotation marks omitted). Accordingly, we hold the trial court did not err when it failed to order a competency hearing *sua sponte*.

IV. Conclusion

Defendant has failed to show that the trial court erred by denying his motion to suppress or by failing to conduct a hearing on defendant's competency to stand trial. Accordingly, we conclude defendant received a fair trial, free of reversible error.

NO ERROR.

Chief Judge MARTIN and Judge CALABRIA concur.