STATE OF NORTH CAROLINA v. KELCIE LEE ANDREW MORTON

No. COA08-1020

(Filed 21 July 2009)

**1. Search and Seizure— defendant approached by officers— no force or show of authority—no seizure**

Defendant was not seized within the context of the Fourth Amendment where officers approached defendant and asked to speak with him about an investigation, but had not raised their guns or turned on their blue lights. Defendant submitted to questioning without physical force or a show of authority.

**2. Search and Seizure— frisk—no evidence that defendant armed—no evidence of criminal activity**

The purpose of a *Terry* search is not to discover evidence, and the trial court erred by denying defendant's motion to suppress scales and cocaine found during a frisk where none of the evidence would support a reasonable suspicion by the officers that defendant was armed or engaged in criminal activity.

Judge Robert C. HUNTER concurring in part and dissenting in part.

Appeal by defendant from order entered 25 April 2008 by Judge W. Osmond Smith, III in Person County Superior Court. Heard in the Court of Appeals 25 February 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General Robert T. Hargett, for the State.*

*Mercedes O. Chut for defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Kelcie Lee Andrew Morton ("defendant") appeals from a denial of his motion to suppress a digital pocket scale and cocaine that resulted in his indictment and subsequent conviction for possession of drug paraphernalia and possession of cocaine with the intent to sell or deliver. For the reasons mentioned herein, we reverse and vacate defendant's convictions.

## I. Background

On 2 July 2006, Detectives R.V. Hughes ("Detective Hughes") and Mark Massey ("Detective Massey")[1] of the Roxboro Police Department were on routine patrol in Person County in an unmarked police vehicle when they observed defendant walking on the sidewalk from the direction of the Food Mart toward his grandmother's house. Having been informed by a confidential informant that defendant may have been involved in a recent drive-by shooting on Burch Avenue ("Burch Avenue shooting") and by several confidential informants and members of the community that he was selling drugs in the area, the detectives stopped defendant to speak with him about the Burch Avenue shooting.

At the motion to suppress hearing, the detectives could not remember the "exact" time the confidential information was provided to them with regard to the shooting and defendant's rumored drug dealing. Detective Hughes testified that "maybe a day or two" before seeing defendant, he received information from a confidential informant that defendant was involved in the Burch Avenue shooting. He said that the informant was reliable and had previously provided information to the police department. Additional confidential informants, as well as "concerned citizens," also reported that defendant

> would be frequenting the area of Weatherly Heights[,] which would be the apartment complex that's right beside the [F]ood [M]art. He would frequent that area, walk over to the [F]ood [M]art and make [drug] sales at that area which is also in close proximity to his grandmother's house, so that he could get back and forth to his drug stash.

That information had been provided to police by "several" sources about two to four months before he stopped defendant, although he did not believe it had been two full months since the last report.

Detective Hughes said that when defendant saw the patrol car coming towards him, "[h]e got into a quick pace, walking almost in a jog, heading toward his grandmother's house." When the detectives pulled over, defendant was attempting to insert his key into the door at his grandmother's house, and "was so nervous that he couldn't get the key in." Detective Massey told defendant that they needed to speak with him. As defendant walked toward the detectives, Detec-

---

1. Testimony indicated that "Lieutenant Wade" was also present in the patrol car; however, it would appear that he played no role in the pat-down or arrest of defendant, and he did not testify at the motion to suppress hearing.

tive Hughes ordered defendant to take his hand out of his pocket, and defendant complied. Detective Hughes had spoken with defendant several times in the past to discuss other information he had received, but had never arrested defendant.

Detective Massey's testimony about the events was similar to that of Detective Hughes, with some additional information and inconsistencies. Detective Massey, a gang analyst, believed defendant to be "involved in a subset of a blood gang affiliated with the south side of Roxboro" because of red pants defendant was wearing the day he was stopped. Although Detective Massey received information sometime in the last month from a confidential reliable informant and from Crime Stopper reports that defendant was dealing drugs, he had not seen defendant engage in any suspicious activity. While Detective Hughes said that they had received information about defendant's involvement in the Burch Avenue shooting within the past few days, Detective Massey remembered only that it was received within the last month. Detective Massey was unsure why the police did not question defendant about the Burch Avenue shooting immediately after receiving the informant's tip. No testimony was elicited with regard to the factual basis for why the detectives said the informants' tips were reliable and no prior pattern of reliability was established.

When defendant approached the patrol car, Detective Hughes told him that they wanted to discuss the Burch Avenue shooting, but that for officer safety, he wanted to pat him down for weapons first. During the pat-down, Detective Hughes felt a hard rectangular object in defendant's pocket, which based on his prior training and experience, he believed to be a digital scale used for weighing drugs. When asked by Detective Hughes if he had a scale on his person, defendant replied that he did, and Detective Hughes removed the scale from defendant's pocket.[2] Detective Massey arrested defendant for possession of drug paraphernalia and searched defendant, retrieving 6.3 grams of crack cocaine from defendant's front left pocket.

Defendant was indicted for possession of drug paraphernalia and possession with intent to sell and deliver cocaine.[3] Defendant filed a motion to suppress and a hearing was held on 23 and 24 April 2008. In its order denying the motion to suppress, the trial court concluded,

2. On cross examination, Detective Hughes stated that he could not remember if he removed the scale from defendant's pocket or if defendant did it himself.

3. The indictment for possession of drug paraphernalia is not included in the record.

that under the totality of the circumstances, it was "reasonable and justified to approach the defendant and request to speak with him regarding their investigation" and to frisk him for the presence of weapons. The court further concluded that it was "reasonable and justified" for Detective Hughes to seize the scale from defendant and "[t]hough, upon the arrest of the defendant for possession of drug paraphernalia, the officers determined that the subsequent search of the defendant was incident to an arrest, *it does not appear to this Court that the officers had probable cause to arrest the defendant only upon the discovery of the scales.*" (Emphasis added.) However, the court found that the continued search of defendant was proper because the digital scale gave the police probable cause to believe that defendant had drugs on his person. The court then determined that "[i]t would have been unreasonable and impracticable to detain/delay the defendant while seeking a search warrant."

On 25 April 2008, defendant was found guilty of both charges and sentenced to 6 to 8 months' imprisonment. Defendant now appeals the denial of his motion to suppress and asks us to vacate his convictions.

## II. Issues

Defendant assigns error to three of the findings of fact arguing that they were not supported by the evidence. He contends that the trial court erred in denying his motion to suppress on the grounds that (1) the detectives did not have a legal basis to stop defendant; (2) there was not reasonable suspicion to pat-down defendant; (3) there was no justification to continue searching defendant after the pat-down, because no weapons were found; and (4) the discovery of the digital scale did not create probable cause for an additional search.

## III. Standard of Review

"[T]he scope of appellate review of [a denial of a motion to suppress] is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted). The trial court's conclusions of law are reviewed *de novo* by this Court. *State v. Branch*, 194 N.C. App. 173, 176, 669 S.E.2d 18, 20 (2008).

IV. Analysis

A. Initial Questioning

**[1]** Defendant asserts that the trial court erred in failing to suppress the evidence seized from his person because the police did not have a legal basis to stop and question him. This Court recognizes a defendant's right to be free from unreasonable search and seizure under the Fourth Amendment with regard to an investigatory stop.

> The right to be free from unreasonable searches and seizures applies to seizures of the person, including brief investigatory stops. "An investigatory stop must be justified by 'a *reasonable suspicion*, based on objective facts, that the individual is involved in criminal activity.'" Whether an officer had a reasonable suspicion to make an investigatory stop is evaluated under the *totality of the circumstances.*

> The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by [the officer's] experience and training. The only requirement is a minimal level of objective justification, something more than an "unparticularized suspicion or hunch."

*In re J.L.B.M.*, 176 N.C. App. 613, 619-20, 627 S.E.2d 239, 243 (2006) (citations omitted) (emphasis added).

"Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry v. Ohio*, 392 U.S. 1, 20 n.16, 20 L. Ed. 2d 889, 905 n.16 (1968). "A seizure of a person occurs only when (1) an officer has applied actual physical force to the person or, (2) absent physical force, the defendant submits to an officer's show of authority." *State v. Fleming*, 106 N.C. App. 165, 169, 415 S.E.2d 782, 784 (1992).

> "Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature."

*State v. Campbell*, 359 N.C. 644, 662, 617 S.E.2d 1, 13 (2005) (citation omitted) (quoting *Florida v. Bostick*, 501 U.S. 429, 115 L. Ed. 2d 389,

398 (1991)). Furthermore, "[l]aw enforcement officers have the right to approach a person's residence to inquire whether the person is willing to answer questions." *State v. Wallace*, 111 N.C. App. 581, 585, 433 S.E.2d 238, 241, *disc. review denied*, 335 N.C. 242, 439 S.E.2d 161 (1993).

In the present case, Detectives Hughes and Massey wished to speak with defendant about a drive-by shooting, of which he was suspected. The detectives also had information which led them to believe that defendant was selling drugs at the nearby shopping area and using his grandmother's house as a base to store the controlled substance. Detective Hughes had spoken to defendant several times in the past in order to investigate information he had received on defendant.

The facts of this case show that defendant submitted to questioning by police absent physical force or a show of authority. The trial court found as fact, "[a]s the officers approached the defendant, Detective Hughes told the defendant that they wanted to talk with him. . . . The officers asked the defendant to step toward the patrol car. . . . The defendant . . . approached the officers. . . . Detective Hughes told the defendant that they wanted to speak with him regarding the (shooting) on Burch Avenue." The detectives did not have their weapons raised, nor did they activate the police car's blue lights. At this point, the detectives had not seized defendant in the context of the Fourth Amendment. They had not physically detained defendant or asserted their authority such that defendant would feel that the questioning was not consensual. Accordingly, the trial court did not err in concluding that "it was reasonable and justified [for the detectives] to approach the defendant and request to speak with him regarding their investigation of the recent drive-by shooting." No constitutional violation occurred when the detectives sought to question defendant.

### B. Frisk of Defendant

[2] Defendant contends that the trial court erred in denying his motion to suppress by concluding that there was reasonable suspicion to frisk him for weapons. We agree.

The United States Supreme Court has held that a protective patdown or frisk for weapons may be performed by an officer, if he has reason to believe, based on " 'specific and articulable facts' . . . that defendant was, or was about to be, engaged in criminal activity and that defendant was 'armed and presently dangerous.' " *State v. Butler*,

331 N.C. 227, 233, 415 S.E.2d 719, 722 (1992) (quoting *Terry*, 392 U.S. at 21, 24, 20 L. Ed. 2d at 906, 908)). We review the totality of the circumstances in determining whether a reasonable suspicion exists. *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994). The requisite degree of suspicion must be high enough " 'to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field.' " *State v. Murray*, 192 N.C. App. 684, 688, 666 S.E.2d 205, 208 (2008) (quoting *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362 (1979)); *see also Fleming*, 106 N.C. App. at 171, 415 S.E.2d at 785 (1992) (holding that "a generalized suspicion that the defendant was engaged in criminal activity" was not sufficient to support reasonable suspicion).

The purpose of a *Terry* search " 'is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.' " *In re Whitley*, 122 N.C. App. 290, 293, 468 S.E.2d 610, 612 (citations omitted), *disc. review denied*, 344 N.C. 437, 476 S.E.2d 132 (1996). " '[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' " *State v. Rhyne*, 124 N.C. App. 84, 89, 478 S.E.2d 789, 792 (1996) (quoting *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909).

Defendant assigns error to the trial court's finding of fact that characterizes the detectives' source of information concerning the Burch Avenue shooting and defendant's drug sales as "confidential reliable informants" and "concerned citizens in the area that the officers deemed reliable." The evidence adduced at the hearing is not sufficient to support a finding that the sources were reliable. In addition, the order contains no conclusion of law on reliability.

An informant's tip can provide the needed reasonable suspicion as long as it exhibits sufficient "indicia of reliability." *Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 309 (1990). We must review the "totality of the circumstances" when evaluating the informant's reliability. *Illinois v. Gates*, 462 U.S. 213, 233, 76 L. Ed. 2d 527, 545, *reh'g denied*, 463 U.S. 1237, 77 L. Ed. 2d 1453 (1983). The fact that an informant has provided accurate information in the past can provide sufficient evidence of his reliability. *Adams v. Williams*, 407 U.S. 143, 146-47, 32 L. Ed. 2d 612, 617-18 (1972).

In the case *sub judice*, the trial court did not have sufficient evidence to conclude that the confidential informants here or "con-

cerned citizens" are reliable. Although Detective Hughes testified that the confidential informant who provided information about the Burch Avenue shooting was reliable, the Fourth Amendment requires "objective proof as to why this informant was reliable and credible[.]" *State v. Hughes*, 353 N.C. 200, 204, 539 S.E.2d 625, 628 (2000).

Detective Hughes testified that the confidential informant who supplied information about the Burch Avenue shooting, had provided information to the police in the past, but did not indicate whether that information was accurate. It is unclear from the record who provided tips that defendant was dealing drugs and whether the informants had a history of providing credible information. Detective Hughes stated only that "concerned citizens" and "confidential reliable sources" said that defendant was dealing drugs. The record does not show whether the "concerned citizens" disclosed their names or made anonymous reports. *See State v. Maready*, 362 N.C. 614, 620, 669 S.E.2d 564, 567-68 (2008) (concluding that when an informer willingly places her anonymity at risk, it weighs in favor of deeming her tip reliable).

"[A] tip that is somewhat lacking in reliability may still provide a basis for reasonable suspicion if it is buttressed by sufficient police corroboration." *Hughes*, 353 N.C. at 207, 539 S.E.2d at 630 (citing *Florida v. J.L.*, 529 U.S. 266, 270, 146 L. Ed. 2d 254, 260 (2000)). Our Court has found reasonable suspicion to exist when there was a short amount of time between the informant's tip and the police officer's observations. In *State v. Allison*, 148 N.C. App. 702, 559 S.E.2d 828 (2002), an informant approached the police officer and told him that, within the past few minutes, she saw four African-American males seated in a restaurant passing around a handgun and discussing plans to rob the place. *Id.* at 703, 559 S.E.2d at 829. The police officer independently corroborated the tip by going to the restaurant immediately and observing four African-American males seated in the restaurant, one of which had something that appeared to be dragging his pants down. *Id.*

The same type of specific and articulable facts were present in *State v. Buie*, 297 N.C. 159, 254 S.E.2d 26, *cert. denied*, 444 U.S. 971, 62 L. Ed. 2d 386 (1979), where a woman reported to the police that she awoke in her motel room to find a man standing over her bed. *Id.* at 162, 254 S.E.2d at 28. Approximately twenty minutes after the woman made her police report, the police officer saw a man near the motel who fit the physical description of the suspect, was fumbling with his pockets, and appeared as if he had been running. *Id.*

Unlike the circumstances in *Allison* and *Buie* where the police officer was able to observe the defendant within an hour of receiving the informant's tip, there is a significant amount of time between when the detectives received the information on defendant and when they saw him on 2 July 2006. The tips that defendant was dealing drugs were received two to four months prior, and the tip that defendant was involved in the Burch Avenue shooting was received sometime within that last month.

Furthermore, the detectives here were not able to sufficiently corroborate the informants' tips about defendant. The fact that defendant was walking from the general direction of the Food Mart to his grandmother's house was not sufficient to corroborate the tips that defendant was dealing drugs in the area. *See Hughes*, 353 N.C. at 210, 539 S.E.2d at 632 (holding that the fact that defendant was "headed in [the] general direction" that informant indicated did not support a finding of reasonable suspicion).

In *Rhyne*, 124 N.C. App. at 91, 478 S.E.2d at 793, we held that the pat-down of the defendant "was an unreasonable intrusion upon defendant's Fourth Amendment right to personal security and privacy." *Id.* at 91, 478 S.E.2d at 793. In that case, the officers received "an anonymous tip that several men were dealing drugs in the breezeway in which the defendant was sitting." *Id.* at 90, 478 S.E.2d at 792. When officers arrived at the location, they found the defendant sitting on the steps of the breezeway of an apartment building. *Id.* at 86, 478 S.E.2d at 790. The defendant complied with the officer's request for identification, which showed that defendant was a resident of the apartment building. *Id.* When an officer asked the defendant if he could search him or allow a specially trained dog to sniff for drugs, the defendant refused. *Id.* At this point, the officer frisked defendant for weapons and felt something which he suspected to be cocaine. *Id.* In holding that the pat-down of the defendant was not justified, we reasoned that (1) "[o]ther than being nervous, [the defendant] exhibited no other behavior that would indicate that he was engaged in criminal activity"; (2) the defendant generally cooperated with law enforcement; and (3) the officer was able to ascertain that the defendant lived in the apartment complex. *Id.* at 90, 478 S.E.2d at 792.

None of the evidence in the case *sub judice* enables the conclusion that defendant was armed or engaged in criminal activity on the day he was frisked. The informants' tips that defendant was involved in the Burch Avenue shooting and was dealing drugs were neither reliable nor could they be independently corroborated. When the detec-

tives observed defendant, he was walking towards his grandmother's house and attempting to unlock the door. Defendant was acting nervous; however, the detectives did not see defendant engaged in suspicious activity nor did they testify that they believed defendant to be armed. *See State v. Myles*, 188 N.C. App. 42, 50, 654 S.E.2d 752, 758 (reiterating that nervousness alone is not enough to constitute reasonable suspicion), *aff'd*, 362 N.C. 344, 661 S.E.2d 732 (2008).

Similar to the defendant in *Rhyne*, defendant, in the present case, also voluntarily agreed to speak with the police, who were able to ascertain that defendant was at his grandmother's house. Defendant cooperated with Detective Hughes' request to remove his hand from his pocket. Furthermore, Detective Hughes had spoken with defendant several times in the past, and did not indicate that defendant had ever previously carried a weapon or posed a danger to a police officer's safety. Given Detective Hughes' past relationship with defendant and his full cooperation at the time, under the totality of the circumstances, it was not reasonable to believe that defendant was armed or dangerous on the day he was stopped.

The record does not support the trial court's factual finding that the information received from confidential informants and concerned citizens was reliable. The remaining findings of fact about the detectives' observations and defendant's actions lack objective facts upon which a court could conclude that it was reasonable to patdown defendant for weapons. Under the exclusionary rule, all evidence seized from the point that defendant was frisked must be excluded. *Mapp v. Ohio*, 367 U.S. 643, 655, 6 L. Ed. 2d 1081, 1090, *reh'g denied*, 368 U.S. 871, 7 L. Ed. 2d 72 (1961) (barring admission of evidence obtained in violation of the Fourth Amendment in state criminal trials).

## IV. Conclusion

The trial court erred in denying defendant's motion to suppress the evidence thereby obtained as a result of frisking defendant, as there was not reasonable suspicion that he was armed and dangerous. Because we are reversing this motion, we need not address defendant's additional assignments of error. We reverse the denial of defendant's motion to suppress and vacate the judgments against defendant.

Reversed and vacated.

Judge CALABRIA concurs.

Judge HUNTER, Robert C., concurs in part and dissents in part with a separate opinion.

HUNTER, Robert C., Judge, concurring in part and dissenting in part.

After careful review, I respectfully concur in part and dissent in part from the majority opinion. I agree with the majority that defendant was not seized when the detectives approached defendant outside of his grandmother's house in order to question him about a recent drive-by shooting. However, unlike the majority, I would further find that under the totality of the circumstances, the detectives in this case had reasonable suspicion to frisk defendant for officer safety.

I. Frisk of Defendant

A. Reasonable Suspicion Based on the
Totality of the Circumstances

When the detectives in this case frisked defendant, a temporary seizure occurred. " 'A police officer may effect a brief investigatory seizure of an individual where the officer has reasonable, articulable suspicion that a crime may be underway.' " *State v. Williams*, 195 N.C. App. 554, 557, 673 S.E.2d 394, 396 (2009) (quoting *State v. Barnard*, 184 N.C. App. 25, 29, 645 S.E.2d 780, 783 (2007), *aff'd*, 362 N.C. 244, 658 S.E.2d 643, *cert. denied*, —— U.S. ——, 172 L. Ed. 2d 198 (2008)). "Reasonable articulable suspicion requires that '[t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training.' " *Id.* (quoting *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994)). Officers may conduct a "Terry" frisk of a person suspected of committing a crime to ensure that the individual is not armed; however, "[t]he scope of a search conducted pursuant to *Terry v. Ohio* is limited. The purpose 'is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.' " *Matter of Whitley*, 122 N.C. App. 290, 293, 468 S.E.2d 610, 612 (1996) (quoting *Adams v. Williams*, 407 U.S. 143, 146, 32 L. Ed. 2d 612, 617 (1972)).

In the case *sub judice*, the detectives had a reasonable suspicion to believe that criminal activity was afoot and that defendant could be armed. Under the totality of the circumstances, the detectives were aware of the following: 1) at least one confidential reliable informant

who had provided information in the past had implicated defendant in a recent drive-by shooting; 2) several informants and anonymous tipsters had reported that defendant sold drugs in that area; 3) defendant was traveling in the path from the Food Mart to his grandmother's house as the informants and tipsters claimed he would; 4) defendant picked up his pace when he saw the detectives looking in his direction; 5) defendant was visibly nervous when the detectives attempted to question him; and 6) defendant was wearing red pants, which indicated to Detective Massey that defendant may be affiliated with a local gang. Any one of these factors alone may not justify reasonable suspicion; however, the totality of the circumstances, " 'as viewed through the eyes of a reasonable, cautious officer' " suggested that a pat down for weapons would be prudent for officer safety as criminal activity may have been afoot. *Williams*, 195 N.C. App. at 558, 673 S.E.2d at 396 (quoting *Watkins*, 337 N.C. at 441, 446 S.E.2d at 70); *see also State v. Garcia*, 197 N.C. App. 522, 529, 677 S.E.2d 555, 559 (2009) ("Factors to determine whether reasonable suspicion existed include activity at an unusual hour, a suspect's nervousness, presence in a high-crime area, and unprovoked flight. However, none of those factors are sufficient independently.").

I firmly believe that the detectives in this case had reasonable suspicion to believe defendant could be armed based solely on the confidential informant's tip that defendant was involved in a recent drive-by shooting and was wearing gang colors. A reasonable officer under the circumstances would think that defendant could be in possession of a weapon since he was reportedly involved in a drive-by shooting. The other evidence presented at the hearing, including defendant's actions and the tips that defendant was dealing drugs in the area, were merely additional factors leading to reasonable suspicion under the totality of the circumstances. Accordingly, I would hold that the trial court did not err in concluding as a matter of law that "it was reasonable and justified to frisk the defendant for the presence of weapons."

B.  Confidential Reliable Informants and Anonymous Tipsters

While I find the tips to be reliable in this case, reasonable suspicion did not hinge solely on the reliability of the tips received by the detectives. First, an informant who Detective Hughes stated had provided reliable information in the past told Detective Hughes that defendant was involved in a drive-by shooting. This tip formed the basis of the detectives' decision to speak with defendant, which the majority correctly holds did not invoke Fourth Amendment scrutiny.

Second, the information supplied to the detectives by other informants and anonymous tipsters that defendant was selling drugs in the area merely provided additional factors in the totality of the circumstances that would lead the detectives to believe a frisk was necessary for officer safety. In other words, the tips did not form the sole basis for reasonable suspicion. However, our Supreme Court has stated:

> We reiterate that the overarching inquiry when assessing reasonable suspicion is always based on the *totality* of the circumstances. When police act on the basis of an informant's tip, the indicia of the tip's reliability are certainly among the circumstances that must be considered in determining whether reasonable suspicion exists. The potential indicia of reliability include all "the facts known to the officers from personal observation," including those that do not necessarily corroborate or refute the informant's statements.

*State v. Maready*, 362 N.C. 614, 619, 669 S.E.2d 564, 567 (2008) (quoting *Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 309 (1990)).

Here, the trial court made the following findings of fact, which were supported by the testimonies of Detectives Hughes and Massey:

8. Prior to that time [2 July 2006], Detective Hughes and Detective Massey had received information from confidential and reliable informants and concerned citizens in the area that the officers deemed reliable and tending to indicate that the defendant had been involved in a recent drive-by shooting on Burch Avenue in Roxboro and further tending to indicate that the defendant had been dealing in illegal drugs in the area.

. . . .

14. The information within the knowledge of the officers as to the defendant's involvement in the shooting and in the involvement of dealing in controlled substances had come from multiple sources and was fairly fresh, some having come within a day or two before July 2, 2006 and some as recent as two-four months prior. The last information provided to Detective Hughes as to the defendant's involvement in the illegal sales of drugs was not as old as two months.

STATE v. MORTON

[198 N.C. App. 206 (2009)]

It appears from the detectives' testimony that some of the information came from confidential and reliable informants used in the past and some from anonymous tipsters. Unlike the majority, for the following reasons I find that there was sufficient evidence to support the finding that the informants were confidential and reliable, and thus properly served as a basis for reasonable suspicion: 1) the detectives testified that they had utilized these informants in the past and they were reliable; 2) the information was sufficiently detailed; 3) the anonymous tips corroborated the statements made by the informants; and 4) defendant acted in conformity with the tips. However, assuming, *arguendo*, that the trial court erred in finding the informants to be reliable, I would still find that there was reasonable suspicion to justify the detectives' actions based on the totality of the circumstances.

Furthermore, not only were there reliable informants that indicated defendant was involved in a drive-by shooting and selling drugs in the area, there were additional anonymous tipsters that also claimed defendant was selling drugs in the area. "An anonymous informant's tip may form the basis for reasonable suspicion, but it must exhibit 'sufficient indicia of reliability.' But even '[a] tip that is somewhat lacking in reliability may still provide a basis for reasonable suspicion if it is buttressed by sufficient police corroboration.' " *Garcia*, 197 N.C. App. at 529, 677 S.E.2d at 559-60 (quoting *State v. Hughes*, 353 N.C. 200, 207, 539 S.E.2d 625, 630 (2000)). In *Garcia*, "[the] [d]efendant argue[d] that the police officers lacked reasonable suspicion before they put him into investigatory detention because the anonymous tips were insufficient *and the police officers otherwise observed only innocent behavior.*" *Id.* at 529, 677 S.E.2d at 560 (emphasis added).[4] This Court addressed defendant's argument and stated:

The anonymous tips provided specific information of illegal activity—possessing and selling marijuana. The tipster also provided a specific location—Defendant's residence. Furthermore, the tipster specifically referenced the shed, the area from which Detective Jones later observed Defendant and his partner emerge carrying a black bag they placed in the rear seat of the black BMW.

---

4. While *Garcia* deals with an investigatory detention, not a frisk, the analysis pertaining to anonymous tipsters forming the basis for reasonable suspicion is applicable here.

*Id.* The Court found that defendant acted in a manner consistent with the tipster's claims and went on to say, "[e]ven assuming information in the anonymous tips was insufficient to create reasonable suspicion, we hold that the trial court's findings of fact support the conclusion that the police sufficiently corroborated the anonymous tips" through a background check and surveillance of the defendant. *Id.*

In the case *sub judice*, there was no evidence that the detectives independently corroborated the tips, but there was evidence that defendant acted in conformity with the tips. Like *Garcia*, the tipsters in this case named defendant, the specific crime he was committing, and the path he would be on from the Food Mart to his grandmother's house where he stored the drugs. Unlike *Garcia*, defendant did not act in an otherwise innocent manner. Here, defendant picked up his pace when he saw the officers, was wearing clothing consistent with gang affiliation, and acted nervously when the detectives approached.

Assuming, *arguendo*, that the various tips alone were not sufficient to create reasonable suspicion, these additional factors, coupled with the tips, were sufficient to create reasonable suspicion for the frisk. The majority cites to cases such as *State v. Hughes* and *State v. Rhyne* to support its argument, but in those cases a single anonymous tipster gave a vague description of the defendant, and the tip was the sole basis for the officers' reasonable suspicion. *Hughes*, 353 N.C. at 208-09, 539 S.E.2d at 631; *Rhyne*, 124 N.C. App. 84, 90-91, 478 S.E.2d 789, 792-93 (1996). Here, the tips came from multiple sources (some from confidential and reliable informants and some from anonymous tipsters), were specific, and were only factors in the totality of the circumstances.

Based on the foregoing, I disagree with the majority's analysis and would hold that the frisk of defendant for officer safety was based on reasonable suspicion. I will now address the remainder of defendant's arguments.

## II. Removal of the Scales

Defendant argues that the detectives' search impermissibly exceeded a pat down for weapons and became a reconnaissance for contraband. Specifically, defendant contends that Detective Hughes unlawfully removed the scale from defendant's pocket upon feeling it during the pat down.

[A] protective search—permitted without a warrant and on the basis of reasonable suspicion less than probable cause—must be

strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed.

*Minnesota v. Dickerson*, 508 U.S. 366, 373, 124 L. Ed. 2d 334, 344 (1993) (quoting *Terry v. Ohio*, 392 U.S. 1, 26, 20 L. Ed. 2d 889, 908 (1968)). However, "officers, at least under certain circumstances, may seize contraband detected during the lawful execution of a *Terry* search." *Id.* at 374, 124 L. Ed. 2d at 344.

If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified . . . .

*Id.* at 375-76, 124 L. Ed. 2d at 346.

The officer must have probable cause to believe the item he or she feels is contraband. *See State v. Shearin*, 170 N.C. App. 222, 226, 612 S.E.2d 371, 376 ("Evidence of contraband, plainly felt during a pat-down or frisk, may also be admissible, provided the officer had probable cause to believe that the item was in fact contraband."), *appeal dismissed and disc. review denied*, 360 N.C. 75, 624 S.E.2d 369 (2005). " 'Probable cause exists if the facts and circumstances within the knowledge of the officer were sufficient to warrant a prudent man in believing that the suspect had committed or was committing the offense.' " *State v. Bowman*, 193 N.C. App. 104, 109, 666 S.E.2d 831, 834-35 (2008) (quoting *State v. Hernandez*, 170 N.C. App. 299, 306, 612 S.E.2d 420, 425 (2005)).

Here, Officer Hughes testified that upon feeling the dimensions of the scale, he immediately knew what it was due to his experience and training. Under N.C. Gen. Stat. § 90-113.21 (2007), a scale is considered illegal contraband if used to weigh or measure a controlled substance. Officer Hughes testified that individuals selling drugs on the street will often carry a scale in his or her pocket to weigh the controlled substance before distribution. Furthermore, Detective Hughes asked defendant if there was a scale in his back pocket, and defendant confirmed it. Because Detective Hughes immediately identified the scale upon touching it, without manipulation, and based on his

experience he believed the scale to be contraband, the trial court did not err in concluding that "Detective Hughes was reasonable and justified in seizing said scales from the defendant."

## III. Continued Search of Defendant

Defendant next argues that the trial court improperly concluded that the detectives had probable cause to search defendant further upon finding the scale. Defendant claims that the following conclusion of law was erroneous[5]:

6. However, the officers had reasonable and justified suspicion to speak with the defendant and justification for a "Terry" frisk for weapons. Upon the discovery of the scales and with all of the other circumstances and information, the officers had probable cause under exigent circumstances to search the defendant for the presence of evidence of crime involving controlled substances.

Defendant strictly argues that the trial court erred in concluding that discovery of the digital scale provided probable cause for the continued search of defendant's person, but defendant makes no argument concerning the trial court's conclusion that exigent circumstances formed the basis for the warrantless search of defendant's other pockets subsequent to the pat down.

Here, Detective Hughes testified that based on his experience in law enforcement, he immediately ascertained that the object he felt in defendant's pocket was a scale due to its clearly ascertainable dimensions. He further testified that in his personal experience, drug dealers often carry scales. These facts, coupled with information that defendant was selling drugs in the area, led him to believe that the scale was being used to weigh drugs prior to distribution, which meant that the scale constituted drug paraphernalia pursuant to N.C. Gen. Stat. § 90-113.21.[6] The fact that defendant was coming from the area in which the informants claimed he was selling drugs, and his nervous behavior, are additional factors leading to the detectives' belief that defendant was involved in illegal activity. Based on these facts and circumstances, I would find no error in the trial court's con-

---

5. Defendant amended his assignments of error to include additional conclusions of law, but he did not seek to amend his brief or file a response brief in order to make arguments concerning these new assignments of error, thus they are abandoned. N.C. R. App. P. 28(b)(6).

6. I do not address the trial court's contention that the scale alone was insufficient evidence to arrest defendant for possession of drug paraphernalia.

**STATE v. MORTON**

[198 N.C. App. 206 (2009)]

clusion that the scale provided probable cause to believe that defendant was also in possession of drugs.

After finding that probable cause existed to believe defendant was in possession of additional contraband, the next step would be to determine whether there were exigent circumstances to justify a warrantless search. *See State v. Yates*, 162 N.C. App. 118, 122-23, 589 S.E.2d 902, 904-05 (2004). However, defendant in this case does not argue that the trial court erred in finding exigent circumstances as the basis for the warrantless search; thus I decline to address that issue. N.C. R. App. P. 28(b)(6).

### IV. Findings of Fact

Defendant also takes issue with findings of fact eight, ten, and fourteen, claiming that these findings were not supported by competent evidence.

Finding of fact eight characterizes the detectives' source of information concerning the drive-by shooting and defendant's drug sales as "confidential and reliable informants." Based on the enumerated factors discussed *supra*, I would find that this finding of fact was supported by competent evidence. Again, assuming, *arguendo*, that the trial court erred in finding the informants to be reliable, I would still find that there was reasonable suspicion for the detectives' actions.

Finding of fact ten states that "[f]or his safety and that of his fellow officer, Detective Hughes conducted a pat down of the defendant as a frisk for weapons." As discussed *supra*, I find that there was justification for the pat down. This finding is not erroneous as it was based on the evidence presented by the detectives that they believed defendant to be involved in criminal activity and potentially armed.

The trial court, in finding number fourteen stated that the information from the informants was "fairly fresh." The evidence tended to show that the information concerning the drive-by was relayed to Detective Hughes approximately two days before 2 July, and the information concerning the drug sales was received between two to four months prior. There was competent evidence that the information was "fairly fresh." Accordingly, I find no error in the trial court's findings of fact.

Based on the above reasoning, I would affirm the trial court's denial of defendant's motion to suppress. Accordingly the judgment in this case should be affirmed.